CHELSEA LAND AND IMPROVEMENT COMPANY, appellant,

*v.*

CHARLES R. ADAMS, respondent.

[Argued July 2d, 1906.   Decided February 2d, 1907.]

Complainant and his predecessor owned certain city property subject to a restriction that no building should be constructed nearer than twenty feet from the street line. This restriction was incorporated in the deeds of over one hundred and fifty purchasers; but, though ninety-nine or one hundred had violated the restriction, no steps had been taken to enforce the same, except in one case, in which a bill was filed in 1898, which was permitted to rest without trial until 1905, when suit was brought to enforce the restriction against defendant.—*Held*, that such facts were sufficient to show an abandonment of the original plan with reference to restrictions, and estopped complainant from enforcing the same against defendant.

On appeal from a decree in the court of chancery, advised by Vice-Chancellor Bergen, who filed the following opinion:

I will dispose of this case now. It appears that the Chelsea Beach Company purchased a large tract of land near Atlantic City for the purposes of development, and caused it to be surveyed and divided into streets, avenues, lots and blocks, and then began the sale of the property under certain restrictions. The important restriction to be considered here is that, in building on these lots, no building should be placed nearer the street in front than twenty feet, or nearer the side line of the lots than five feet. This court has, in an opinion by Vice-Chancellor Reed, which has been read here, although it does not appear to have been reported, determined that the restriction as to twenty feet applied to the sides of a corner lot, as well as the front, so that a building on the corner of a lot must be placed not only twenty feet from the front, but also twenty feet from the side street. In that situation the property remaining in the Chelsea Beach Com-

pany has been transferred to the present complainant, the Chelsea Land and Improvement Company. The defendant here obtained his title through mesne conveyances from the complainant. The deeds in that chain of title contained the restriction with the exception of one deed, but even that deed made a reference to the restriction sufficient to put the purchaser on notice. So that, when the defendant bought this property, he bought it subject to the condition that he would not put on that lot a building nearer the street in front of the lots than twenty feet. It is admitted that he has violated that restriction; that he at first contemplated building a structure to be used as a bathhouse, in connection with a sun-parlor, to be built flush with the street; that, after the proceedings in this cause were instituted, he determined to, and did, build the front of the building further back from the street, although it yet is beyond the restricted line.

His defence is that, while his deed contained this restriction, the same restriction was incorporated in the deeds of other purchasers to the number of one hundred and fifty. Of that number ninety-nine or one hundred have violated the restriction contained in their deeds, and that this complainant, who is occupying substantially the position of the original company (having taken over all the property and undertaken to dispose of it subject to the same conditions), has stood by and permitted all these violations without complaint. Some of them were trivial, but others were important. Certainly the violation as to the Chelsea hotel property is an important one, and I think there are two other dwellings of considerable importance and value, whose owners have been permitted to violate this agreement, and the defendant insists that having abandoned the general scheme, the complainant now has undertaken to enforce the restriction against this defendant, without taking any steps to compel other people to observe their covenants, except in the single instance where a bill was filed in 1898, which suit it appears has not been prosecuted, and that such conduct is inequitable. While the president of the corporation testified that he had recently seen counsel and urged him to proceed with the case, I do not feel

justified in saying that the filing of a bill in 1898, without further proceedings, was an indication that it has been the intention to preserve the plan. The suit has not been diligently pursued. No result has been reached, and no steps taken between 1898 and 1905. The ordinary litigant, determined to assert its right, would probably have employed other counsel if he could not get his case to a hearing through the efforts of the one employed. Upon the case as presented, I feel that I would not be justified in enforcing this restriction against this defendant. There have been a great many violations of these restrictions. They have been violated by two-thirds of the people who bought land from this company. Large hotel properties, and wealthy people have built, some on the very street where defendant's property is located, and their buildings have been so erected that their foundations are beyond the restricted line, and yet not a word has been said by this complainant. It may be that, in the judgment of the officers of this company, they thought it prudent to allow these people to violate these restrictions, because they were putting in this locality large and valuable buildings, which enhanced the value of the land remaining in the hands of the company. That may be a wise thing to do. I am not criticising them. But I think that all the persons occupying these lands are entitled to be treated alike, and this complainant company cannot undertake to waive violations of these restrictions in so universal a manner as it is proved has been done here, and then undertake to enforce it against one other of their purchasers. Such a general consent to the non-observance of restrictive covenants amounts to an abandonment of the original intention and design with regard to restrictions. If the original grantor of one hundred and fifty lots by deeds, with a restriction as to building lines, allows two-thirds of the grantees to violate it without protest, it cannot enforce it against a single grantee for the purpose of benefiting its remaining lands, for the grantee thus assailed is entitled to the common privileges accorded to other purchasers who are subject to like restrictions. It appears in this cause that the complainant obtained from certain of the purchasers of a part of the tract a release as to the restrictions,

so far as a portion of the whole was affected, and thereafter, as to that part, changed the character of the restriction, and materially altered the scheme of the original plan, not only as to size of the lots, but as to the building lines. This change affected all the lotowners, and cannot be confined by the original holders to a portion of the property, especially as, in this cause, the changes relate to a part of the street upon which defendant's lands are located. This bill is not filed by individual lotowners, but on behalf of the holding company, owners of unsold portions, and because of its laches in so many instances is presumed to have abandoned the original plan as to restrictions.

A decree will be advised dismissing the bill of complaint.

*Mr. William M. Clevenger,* for the appellant.

*Mr. George H. Bourgeois* and *Mr. J. Morton Adams,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered in the court of chancery by Vice-Chancellor Bergen.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, HENDRICKSON, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—10.

*For reversal*—SWAYZE, REED, TRENCHARD—3.