[No. 11072.   Department Two.   January 23, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Chicago,
Milwaukee & Puget Sound Railway Company,
Respondent,* v. PUBLIC SERVICE COMMISSION
*et al., Appellants.*[1]

RAILROADS—FACILITIES—SIDE TRACKS—DEMAND—SUFFICIENCY. The
sufficiency of a demand for side track connections cannot be ques-
tioned by a railroad company, where it appears that, after some
correspondence, its general counsel absolutely refused to entertain
further negotiations looking to the installation of any kind of a
spur track at or near the point in question, and its division super-
intendent testified that he would not have recommended any kind
of a spur there, and none would have been put in except on his
recommendation, and no objection was made by the company to the
form or sufficiency of the demand.

SAME — FACILITIES—SIDE TRACKS — COMPULSORY INSTALLATION—
CONSTITUTIONAL LAW—DUE PROCESS OF LAW.   The public service
commission law, 3 Rem. & Bal. Code, §§ 8626-13, 8626-62, providing
that, upon denial by a railroad company of a shipper's application
for a switching connection, the public service commission, upon due
hearing, may compel the company to provide, on its own right of
way, at the cost of the shipper and others using it, a side track and
switching connection if reasonably practicable and the business
therefor is sufficient to justify it, is not unconstitutional as depriv-
ing the company of property without due process of law; since
the spur is to be built entirely on land of the company held for
public use, there is a full hearing, and the spur is to be paid for
by others, and is open to the use of all shippers on reasonable
terms.

SAME—PUBLIC USE—SIDE TRACKS.   A spur track intended pri-
marily for the immediate use of a single shipper, open upon rea-
sonable terms to the use of the public, is a public use.

SAME — REGULATION — SIDE TRACKS — INTERFERENCE WITH INTER-
STATE COMMERCE.   Whether an order of the public service commis-
sion requiring the installation of industrial side track connections
interferes with interstate commerce is a question of fact, and it
will not be so held where the evidence fails to show any ap-
preciable effect upon interstate business, and it appears that the
spur is reasonable and practicable, and can be operated with rea-
sonable safety.

[1]Reported in 137 Pac. 1057.

Appeal from a judgment of the superior court for Thurston county, Yakey, J., entered January 14, 1913, vacating an order of the public service commission ordering side track facilities, after a hearing on the merits. Reversed.

*The Attorney General* and *Stephen V. Carey, Assistant,* and *Short & Gleysteen* and *J. H. McDaniels,* for appellants.

*F. M. Dudley,* for respondent.

ELLIS, J.—This is an appeal from a judgment of the superior court of Thurston county, vacating an order of the public service commission requiring the respondent railway company to build and install, at the expense of the applicants, Miller & Short, a side track connecting with the main line of the railroad company at a point about .59 miles northwest of the flag station of Whittier, in Kittitas county. For convenience, we will, throughout, designate the parties as "appellants" and "respondent."

The appellants, Miller & Short, own certain timber lands, northwest of Whittier, and crossed by respondent's railway. They also own and operate a mill at Cle Elum, on the Northern Pacific railroad, which can only be reached by shipping over respondent's road to Easton, and thence, over the Northern Pacific road to Cle Elum. In 1910, they made application to the respondent for the construction of a spur partially on the right of way and partially on the appellants' land. The railroad company, after repeated renewals of the request for the spur, finally, on August 31, 1911, refused the request, and the appellants filed their complaint with the public service commission. After a hearing, on due notice, the public service commission made findings of fact substantially as follows: That the complainants, Miller & Short, are the owners of about ten million feet of standing timber in the east half of the northwest quarter and the west half of the northeast quarter of section 22, township 21, north, range 12, east W. M., in Kittitas county, through which tracts the defendant's railway runs, and that the complainants had been

shipping over the defendant's line from Whittier to Easton; that the complainants' timber lies principally on the east side of the tract; that the nearest point on defendant's road at which complainants can load their timber is at Whittier; that the complainants' land east of the track is lower than the railroad track and, in moving the timber to Whittier, it is necessary to haul it over a heavy grade, cross the track, and then on another grade nearly a mile to Whittier, the total distance being from one to two miles; that it is impossible to haul the heavier timber on trucks to the station; that the cost of hauling in the manner necessary at present is $1.50 to $2 per thousand feet in excess of what it would cost with more convenient loading facilities; that, in January, 1910, the complainants applied to the defendant company for a loading spur on the northeasterly side of defendant's track, near the center of section 22, on the defendant's railroad, about .59 miles from Whittier; that this was finally rejected by defendant August 30, 1911; that the spur asked for would pass over defendant's right of way for several hundred feet, then onto complainants' land, being about 1,500 feet in length; that defendant refuses to install the spur requested, claiming that the present facilities are adequate and that the proposed spur would be impracticable and undesirable. The commission further found that the present loading facilities at Whittier are inadequate, and that, by reason of the poor roads and steep grades over which complainants have to haul, it is impossible to load the largest timber; that complainants intend to ship three cars a day during the logging season, weather permitting, if the spur is installed; that complainants are now paying from Whittier to Easton $1 per thousand feet freight charge, with a minimum of $7 per car; that the United States has a large amount of mature timber for sale on land near complainants which is not now salable because of the difficulty of shipping it, and which could be shipped were the proposed spur installed; that defendant's right of way is 100 feet wide, and that there is ample room

on which to construct the loading spur on the right of way; that complainants need a loading spur about 300 feet long near the point mentioned, which would cost $575. The commission found this cost by items, and found that the complainants were ready and willing to pay it; that two weeks time is a reasonable time to allow for the construction of such spur; that such spur is reasonable and practical, can be put in and operated with reasonable safety; and that there is sufficient business to justify the installation of the spur without considering the timber held for sale by the United States government. A reading of the record convinces us that these findings are sustained by ample evidence. Upon these findings, the commission, on October 7, 1912, made an order which, omitting caption and immaterial parts, reads as follows:

"This cause having been regularly heard and considered and The Public Service Commission of Washington having made and filed its findings of fact herein, and being fully advised in the premises:

"Now orders, that the defendant, Chicago, Milwaukee & Puget Sound Railway Company be, and it is hereby required within the time and upon the conditions hereinafter stated, to construct a spur track three hundred feet in length from head block to end of spur entirely upon its own right of way for the use of the complainants and such other persons and corporations as may be entitled to the use thereof. Said spur track shall be located on the northeasterly side of defendant's main track at a point near the center of section 22, township 21 north, of range 12 east W. M. in Kittitas county, Washington, and fifty-nine one-hundredths (59-100) of a mile east of the station of Whittier.

"Within fifteen days from the date of this order, the complainants shall pay to the defendant the sum of five hundred seventy-five dollars in cash to cover the cost and expense of constructing said spur track, and the defendant shall within thirty days from and after the payment to it of said sum construct said spur track as hereinbefore provided.

"This order is made upon the condition that any person or corporation other than the complainants shall be entitled to connect with said spur or use the same, upon the payment

to the complainants of a reasonable proportion of the cost thereof to be determined by this commission after notice to the interested parties, provided that such connection can be made without unreasonable interference with the rights of the said complainants."

Thereupon the respondent instituted proceedings in the superior court of Thurston county to review the order of the commission. On that review, the respondent contended, and the trial court held: (1) that the evidence failed to show a sufficient demand on the appellants' part to install the spur as ordered by the commission, in that the demand was for a spur 1,500 feet long and partly off the right of way; (2) that the statute requiring railroad companies to install such side tracks is unconstitutional; (3) respondent now also contends that the order is an undue interference with interstate commerce. This appeal is prosecuted by the original applicants for the spur, and presents these three questions for our consideration.

I. The demand, as made, and the refusal of the respondent, is evidenced by a considerable volume of correspondence which we deem it unnecessary to set out in full. It culminated in a letter of August 30, 1911, from the general counsel of respondent to the attorneys for appellants, which reads as follows:

"Your letter of July 20th, referring to your application for a spur track, to be used for loading logs about one mile west of Whittier station, has been considered by the officials of the railway company and has been referred to me for reply.

"It appears that since the extension of the industry track or set-out track at Whittier station, by lengthening it and connecting it at each end with the passing track, reasonable facilities for loading logs have been afforded at that station. The physical condition of the ground is such as to facilitate the loading of logs onto cars. It should not be expected that the railway company will provide, at any point on its railroad where shippers may desire to load logs, spurs for such purpose; particularly, in a case where, as here, reasonable facilities exist at a station.

"It is not desirable to cut the main line for temporary spurs as would be the one you are asking for.

"After consideration of all these matters, and of the present facilities, the railway company has decided to decline the application of Miller and Short for the installation of a spur loading track at the proposed location."

It is too clear for cavil that this letter was, in effect, and was intended to be, an absolute refusal to entertain further negotiations looking to the installation of any loading track or spur of any kind at or near the point in question. Moreover, the testimony of the superintendent of the respondent's coast lines was to the effect that he would, in no event, have recommended the installation of any spur of any kind at the point in question, and that, in the absence of such a recommendation by him, no spur would have been authorized. The respondent is in no position to question the sufficiency of the demand while expressly admitting that a demand such as it now claims would have been sufficient would not have been met in any event. The demand as made was sufficient to include everything ordered. The refusal was not based upon the fact that the demand went beyond the terms of the statute. To hold that the demand and refusal must take the exact form and terms of the order as finally made by the commission would be to render the statute ineffective in its practical operation. We deem it more consonant with reason and the plain purpose of the statute to hold that the right to insist upon a demand of the exact thing ordered may be waived by the failure to question the sufficiency of the demand when it is made, as in other cases where demand, tender, and the like are required as antecedent to a right of action. This court, in common with other courts, has held that, in such cases, the requirement is met by proof of facts showing that any different demand or tender from that made would be useless.

"We think it is the general rule that a demand is never necessary where it would be unavailing, if made." *Burrows v. McCalley*, 17 Wash. 269, 49 Pac. 508.

See, also, *Chappell v. Woods*, 9 Wash. 134, 37 Pac. 286.

"It is a general rule that when the tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived or becomes unnecessary, when it is reasonably certain that the offer will be refused—that payment or performance will not be accepted. Such is the doctrine established by this court in repeated decisions in regard to another branch of the law concerning the collection of taxes." *Hills v. Exchange Bank*, 105 U. S. 319.

See, also, *St. Louis & S. F. R. Co. v. Richards*, 23 Okl. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032.

II.  The respondent contended, and the trial court held, that the statute upon which the order of the commission was based is void as violative of article 1, § 3 of the constitution of the state of Washington, which declares "no person shall be deprived of life, liberty, or property without due process of law," and is violative of § 1, of the 14th amendment of the Federal constitution, which declares "nor shall any state deprive any person of life, liberty or property without due process of law." The argument proceeds upon the theory that such a side track as that provided for by the statute is private and that the use contemplated is a private use; that the right of way of the railroad company is its private property and that the taking of private property for a private use is the taking of property without due process of law. The statutory provisions under which the proceedings here in question arose are found in the public service commission law, Laws of 1911, ch. 117, page 538 *et seq.* Section 13 of that law is as follows:

"A railroad company upon the application of any shipper shall construct, maintain and operate upon reasonable terms a switch connection or connections with a lateral line of railway or private side track owned, operated or controlled by such shipper, and shall upon the application of any shipper, provide upon its own property a side track and switch connection with its line of railway, whenever such a side track and switch connection is reasonably practicable, and can be

put in with safety and the business therefor is sufficient to justify the same." (3 Rem. & Bal. Code, § 8626-13.)

Section 62, conferring upon the commission powers intended to be adequate to compel public service companies to discharge the duties imposed by § 13 and other sections of the act, reads as follows:

"Whenever the commission shall find, after a hearing had upon its own motion or upon complaint, as herein provided, that application has been made by any shipper for a switching connection or connections with a lateral line of railway or private side track owned, operated or controlled by such shipper, or that application has been made by any shipper for the installation of a side track upon the property of such railroad, and that such switch connection or side track is reasonably practicable, can be put in with reasonable safety, and the business therefor is sufficient to justify the same, and that the railroad company has refused to install or provide the same, the commission shall enter its order requiring such connection or the construction of such side track: *Provided*, Such shipper so to be served shall pay the legitimate cost and expense of constructing such connection or side track as shall be determined in separate items by the commission, and before the railroad company shall be compelled to incur any cost in connection therewith the same shall be secured to the railroad company in such manner as the commission may require. Whenever such lateral line of railway, private side track or side track upon the property of the railroad company shall be constructed under the provisions of this section, any person or corporation shall be entitled to connect therewith or use the same upon payment to the shipper incurring the primary expense of a reasonable proportion of the cost thereof, to be determined by the commission after notice to the interested parties: *Provided*, That such connection can be made without unreasonable interference with the right of such shipper incurring the primary expense." 3 Rem. & Bal. Code, § 8626-62.

These are the provisions which the respondent attacks as unconstitutional. A careful consideration of these statutory provisions makes it plain that any order of the commission following the terms of the statute is impressed with the fol-

lowing characteristics: The spur is to be built entirely upon
the right of way of the railroad company, which is held for
railroad uses. The order can be made only after notice to
the railroad company, and a full investigation into the facts
upon a written complaint filed for the purpose. The spur,
though constructed by the railroad company, is to be paid
for by the shippers who use it. The spur, though intended
for the immediate use of a particular shipper or shippers,
is open to the use, upon reasonable terms, of all shippers
who may desire to use it. No court, so far as we are ad-
vised, has ever held that an order made under statutory
authority, for a spur track impressed with all of these char-
acteristics, was a taking of property without due process of .
law, or a taking of property purely for a private purpose.

The respondent relies mainly upon two decisions of this
court involving the obligation of railroad companies to build
spurs for the accommodation of industries. In the first case,
*Northwestern Warehouse Co. v. Oregon R. & Nav. Co.*, 32
Wash. 218, 73 Pac. 388, it was held that a railroad company
could not be required, under the statutes then in force, to
extend its track over lands which it did not own a distance
of some 250 feet to a warehouse located beyond the end of the
track. It appeared that the railroad company had never
followed the policy of furnishing similar facilities to other
shippers in the same line of business. The only constitu-
tional question presented was that relating to section 15, of
article 12, of the state constitution, forbidding discrimina-
tion by common carriers, and section 22, of the same article,
prohibiting contracts between companies limiting the pro-
duction, or regulating the transportation of any product or
commodity. It was held that these sections of the constitu-
tion were not self-executing, and that the application for the
track extension was not within the terms of the statute
passed pursuant to these constitutional provisions. No ques-
tion touching the due process clause of the constitution,
either state or Federal, was involved.

The second case was that of *Northern Pac. R. Co. v. Railroad Commission*, 58 Wash. 360, 108 Pac. 938, 28 L. R. A. (N. S.) 1021, known as "The Burnham Spur Case." In that case, Burnham, the applicant for the spur, owned and operated a sawmill tributary to the line of the railroad company at a point between the stations of Rainier and McIntosh, about 300 feet distant from the main line of the railroad. The company refused to construct the spur, and the mill owner appealed to the railroad commission under the then existing railroad commission law. The commission, after a hearing, ordered the railroad company to build a spur from its main line across its right of way and over certain private lands to the mill. The order required the applicant to do the grading and furnish the ties, but that all other expense should be borne by the railroad company. The superior court sustained the order, and an appeal was taken to this court. In reversing the decision of the trial court, this court said:

"The order makes no provision for a right of way, and the evidence does not disclose who owns the land over which the spur track is to be constructed . . . .

"The appellant contends that the order is a taking of its property without due process of law, and that it contravenes the fourteenth article of amendment to the Federal constitution. We think this view must prevail. The sawmill is a private industry, and the effect of the order is to take the private property of the appellant and devote it to the private use of Burnham. *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820."

The opinion, after discussing certain decisions of the supreme court of the United States, to which we shall presently refer, concludes as follows:

"However desirable it may be for Mr. Burnham and others engaged in a like business to have switches and sidings extended to their mills, the fourteenth amendment to the Federal constitution, as construed by the highest Federal court and by this court as well, presents an insuperable barrier against compelling such accommodations.

"The contention of the attorney general that the order is promotive of the public convenience, and within the recognized police power of the state, cannot be upheld. We are persuaded, upon both principle and authority that the Burnham mill is a private business, and that an order requiring the railroad company to extend a switch or spur track beyond its right of way to afford him better and cheaper shipping facilities, is, in substance and effect, requiring the company to devote its property to the private use of another, and is within the protective clause of the Federal constitution."

From the parts of the opinion which we have quoted, and, in fact, from the entire opinion, it is manifest that the real holding of the *Burnham* spur case, when confined to the facts there involved, went no further than this: that, where an order of the state railroad commission seeks to compel a railroad company, at its own expense, in whole or in part, to build a spur track off of its own right of way and over private property for the exclusive use of a single shipper, which spur does not become the property of the railroad company, and cannot be open to the public use, because located on private property, such an order amounts to the taking of private property for a private use, and therefore, contravenes the guaranty of both the state and the Federal constitutions against the taking of private property without due process of law. Such a holding is, in no sense, determinative of the question here presented. That case does not hold that a railroad company may not lawfully be required, after hearing on notice as to the necessity and reasonableness of the application, to build entirely upon its own right of way, and at the expense of the applicant, a side track, giving to a private industrial plant access to the railway without which such private industry would be deprived of any practical participation in the public service to which the railroad is devoted, such a spur, when so constructed, to be open to the use of all members of the public on payment of an equitable proportion of the cost. The decision in the

*Burnham* case was rested mainly upon the decision of the United States supreme court in *Missouri Pac. R. Co. v. Nebraska,* 164 U. S. 403; and *Missouri Pac. R. Co. v. Nebraska,* 217 U. S. 196. In the first of those cases, the Nebraska state board of transportation, assuming to act under a statute prohibiting railroads from giving undue preferences or indulging in discrimination between shippers, made an order requiring the railroad company to grant to certain applicants the privilege of erecting and maintaining a private grain warehouse upon the railroad right of way. The supreme court of Nebraska construed the statute in question as authorizing the order. The supreme court of the United States held the statute so construed unconstitutional, using the following language:

"The order in question was not limited to temporary use of tracks, nor to the conduct of the business of the railway company. But it required the railway company to grant to the petitioners the right to build and maintain a permanent structure upon its right of way . . .

"To require the railroad company to grant to the petitioners a location on its right of way, for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers, is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and for a public use, to an association of private individuals for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business, or for the convenience of the public.

"This court, confining itself to what is necessary for the decision of the case before it, is unanimously of opinion, that the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners. The taking by a state of the private property

of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States."

It will be noted from the above quotation that the court was careful to limit the language used to the facts there presented. The scope of the decision is also guarded and circumscribed by the following language found therein:

"Nor does it [the record] present any question as to the power of the legislature to compel the railroad company itself to erect and maintain an elevator for the use of the public; or to compel it to permit to all persons equal facilities of access from their own lands to its tracks, and of the use, from time to time, of those tracks, for the purpose of shipping or receiving grain or other freight."

The offense of the statute lay in the fact that the warehouse, being a private warehouse, would not be open to the use of the public on equal terms. The railroad company would thus be required to relinquish all control over a part of its right of way to private individuals. The warehouse, when constructed, could not be used by the railroad company in aid of its public service. In the case before us, no such situation is presented.

After the last mentioned decision, the legislature of Nebraska passed a statute which required every railroad company, upon application, at its own expense, to construct and maintain a spur track on its right of way to reach every grain warehouse located on land contiguous thereto. The second case above referred to, *Missouri Pac. R. Co. v. Nebraska*, 217 U. S. 196, arose under that statute. Holding the law unconstitutional, the supreme court of the United States said:

"It will have been noticed that there is no provision in the statute for compensation to the railroad for its outlay in building and maintaining the side tracks required. In the present cases, the initial cost is said to be $450 in one and $1,732 in the other; and to require the company to incur

this expense unquestionably does take its property, whatever may be the speculations as to the ultimate return for the outlay. . . .

"This statute has no reference to special circumstances. It is universal in terms. If we were to take it literally, it makes the demand of the elevator company conclusive, without regard to special needs and, possibly, without regard to place. . . . On the face of it the statute seems to require the railroad to pay for side tracks, whether reasonable or not—or, if another form of expression be preferred, to declare that a demand for a side track to an elevator anywhere is reasonable, and that the railroads must pay. Clearly no such obligation is incident to their public duty, and to impose it goes beyond the limit of the police power . . .

"If the statute makes the mere demand conclusive, it plainly cannot be upheld. If it requires a side track only when the demand is reasonable, then the railroad ought, at least, to be allowed a hearing in advance to decide whether the demand is within the act . . . We are of opinion that this statute is unconstitutional in its application to the present cases, because it does not provide indemnity for what it requires."

It will be noted that these two decisions of the Federal supreme court denounced statutes of Nebraska different from each other, both of them essentially different from our statute, and as offending in particulars not to be found in our statute. The first Nebraska statute, though authorizing the order after notice and a hearing, was held to violate the due process clause because it sought to compel the railroad company to devote property acquired and held for its public purposes as a transportation company to a use purely private and wholly private in that the warehouse there in question was a private warehouse, owing no duty to the public and not open to the use or service of any one save its owners.

The second Nebraska statute presented a typical case of offense against the due process clause in that it purported to require any railroad in the state, at its own expense, and upon mere demand of the owner of any warehouse, to build a side track without any opportunity to be heard as to the necessity for the track or as to the reasonableness of the de-

mand.  It was held unconstitutional, first, because it pro-
vided no indemnity for what it required; second, because,
being general in terms, it made no distinction between rea-
sonable and unreasonable demands; third, because it made
no provision whatever for a hearing in advance as to the re-
quirements in any ·particular case.   After noting these
things, the court was careful to limit the decision as an au-
thority by stating what it did not hold.   The opinion con-
cludes:

"We are of opinion that this statute is unconstitutional
in its application to the present cases, because it does not
provide indemnity for what it requires.   We leave other ques-
tions on one side, and do not intend by anything that we
have said to prejudice a later amendment providing for a pre-
liminary hearing and compensation, which is said to have
been passed in 1907."

These two decisions may well be considered as ample au-
thority for our decisions in the *Burnham* spur case, since the
order there involved, though made after notice and a hear-
ing, provided no indemnity to the railroad company for what
it exacted, required the railroad company, at its own ex-
pense, to lay down its own rails upon property not its own
but outside of its right of way, and neither the order nor the
statute under which it was made contained any provision
securing the use of the spur to the public on any condition
equitable or otherwise.   The statute here under consideration
offends in none of these particulars.

Neither the supreme court of the United States nor of
this state nor any other court, so far as we are advised, has
ever held that a railroad company may not lawfully be re-
quired, after a hearing on notice as to the reasonableness of
the application, to build upon its own right of way, at the
entire expense of the applicant, a spur track giving to a
private industrial plant access to the railway, without which
such private industry would be deprived of any practical
participation in the public service which the railway com-

pany is bound to give to all members of the public on equal
terms, such spur, when so constructed, to be open to the use
of all members of the public upon payment of an equitable
proportion of the initial cost and to be under the control of
the railroad company, subject only to the same supervision
and regulation of the state as that exercised over other parts
of the railroad system. Such a spur is essentially a public
spur. Such a use of the railroad right of way is essentially
a public use, a devotion to legitimate railroad purposes. As
said by the supreme judicial court of Maine, in a case involv-
ing the exercise of the right of eminent domain:

"The tests decisive of this question, as to whether a branch
track of this character is to be constructed and operated for
public or private purposes, deducible from the great weight
of authority upon the question in this country, are these:
If the track is to be open to the public, to be used upon equal
terms by all who may at any time have occasion to use it,
so that all persons who have occasion to do so can demand
that they be served without discrimination, not merely by
permission but as of right, and if the track is subject to gov-
ernmental control, under general laws, as are the main lines
of a railroad, then the use is a public one." *Ulmer v. Lime
Rock R. Co.*, 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387.

As said by the supreme court of Utah:

"The test is, will any and all persons and business institu-
tions who may have occasion to do so be permitted to use it?
That is, will the track be open to public use generally? If
so, then it is a public utility." *Stockdale v. Rio Grande W.
R. Co.*, 28 Utah 201, 77 Pac. 849.

As said by the supreme court of Iowa:

"And we think that it makes no difference that the mine-
owner may be the only member of the public who may have
occasion to use the way after it has been established. The
character of a way, whether it is public or private, is deter-
mined by the extent of the right to use it, and not by the ex-
tent to which that right is exercised. If all the people have
the right to use it, it is a public way, although the number
who have occasion to exercise the right is very small." *Phil-
lips v. Watson*, 63 Iowa 28, 18 N. W. 659.

And, as said by the supreme court of the United States:

"The uses for which the track was desired are not the less public because the motive which dictated its location over this particular land was to reach a private industry, or because the proprietors of that industry contributed in any way to the cost." *Hairston v. Danville & W. R. Co.*, 208 U. S. 598.

That a spur track intended primarily for the immediate use of a single shipper, but open upon reasonable terms to the use of all members of the public who may have occasion to use it, is a public use, is sustained by overwhelming authority. *Chicago & N. W. R. Co. v. Morehouse*, 112 Wis. 1, 87 N. W. 849, 88 Am. St. 918, 56 L. R. A. 240; *Chicago, B. & N. R. Co. v. Porter*, 43 Minn. 527, 46 N. W. 75; *De Camp v. Hibernia R. Co.*, 47 N. J. L. 43; *Butte, A. & P. R. Co. v. Montana U. R. Co.*, 16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298; *Chicago Dock & Canal Co. v. Garrity*, 115 Ill. 155, 3 N. E. 448; *Railway Co. v. Petty*, 57 Ark. 359, 20 L. R. A. 434; *Kettle River R. Co. v. Eastern R. Co.*, 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; *National Docks R. Co. v. Central R. Co.*, 32 N. J. Eq. 755; *Hays v. Risher*, 32 Pa. St. 169; *Zircle v. Southern R. Co.*, 102 Va. 17, 45 S. E. 802, 102 Am. St. 805.

We can conceive of no sound reason to hold that a use sufficiently public to sustain the exercise of the delegated sovereign power of eminent domain by a railroad company to acquire a right of way as for a public use, would not be equally a public use as applied to a use for the same purpose of a right of way already owned by the railroad company. It is merely speciously correct to say that a part of the railroad's right of way is appropriated to the use of the special industry. If, as is undoubtedly true, the owner of the given industry, as a member of the public, has a right to participate in the public service to which the railroad and its right of way are devoted, and the spur when built is open to the use, on equal terms, of every other member of the public who

may desire to use it, then the part of the right of way so used is, on all authority, appropriated to a public use.

The case of *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, has no applica-. tion. That case merely held that a private logging road is not a public utility and hence the power of eminent domain cannot be exercised in aid of it. Under a later statute (Rem. & Bal. Code, §§ 7106-7109; P. C. 405 §§ 429-435), authorizing the organization of logging roads with the duty of general transportation of logs and other timber products, such a road is held to be a public utility, though its primary purpose is to conduct its own business as a logging company, and carry its own products. The mere fact that any member of the public may require the transportation of logs over the road on reasonable terms makes of it a public utility and, as such, capable of exercising the power of eminent domain. *State ex rel. Clark v. Superior Court*, 62 Wash. 612, 114 Pac. 444. On the main principle, the case here is an exact parallel. The spur track, though primarily intended for the use of the applicant, will, when constructed, be open to the use of any member of the public desiring to use it. It will be just as much a public spur as that now found at Whittier. Both will be subject to the reasonable use of the public.

Such a side track as that contemplated by the statute and order here in question is, in no just sense, a mere private convenience any more than is the railroad itself. It is ancillary to, and in aid of the public service. The statute proceeds upon the just and reasonable theory that, as a part of the public service undertaken by a common carrier, there is a duty to permit every member of the public, at the entire expense, but also at the least expense of that member, to provide the means indispensable to a participation in the public service, whenever such means do not unreasonably interfere with the general service or operation of the public utility, and whenever such means so provided are open to the use of the public on equal terms. The public service is but the aggre-

gate of the service accorded to private enterprises and individuals. Any unreasonable restriction of the service as to any individual is, therefore, an unreasonable impairment of the public service. These considerations make it clear that the track, when built, becomes an integral part of the public utility, a portion of the railroad system. Nor does the fact that the initial cost, both of materials and of the construction of the spur, is to be borne by the person primarily to be served, deprive the spur of its essential character as an integral part of the public utility. This does not make it a private track, nor change the nature of its use. *Hairston v. Danville & W. R. Co., supra.* The statute expressly prohibits such a result by providing that, subject to an equitable division of the initial cost, the track is at the service of the public as much as is any other part of the railroad system. The owner of the industry primarily served has no control over the spur nor any interest in it other than the right of being served by it, and that right is shared equally by every other person who may desire to share it. The control of the railroad company over it is as complete as over any other part of its system and is subject only to state control or regulation under the general laws.

Only one court of last resort, so far as we are advised, has been called upon to consider the validity of a statute similar to ours. The statute of Wisconsin is like that of this state in nearly every essential particular save that, under it, the railroad may be required, at the expense of the applicant for an industrial spur, to acquire a right of way for the spur not exceeding two miles in length. The supreme court of that state, in sustaining the statute, uses language so clearly applicable to our own statute, that we quote from it at some length.

"It will be observed from the first subdivision of the section that four facts must co-exist before a railroad can be compelled to acquire a right of way, construct, maintain, and operate a spur track, namely: (1) the spur track must not

exceed two miles in length; (2) it must be practically indispensable to the successful operation of the existing or proposed plant, industry, or enterprise; (3) its construction and operation must not be unusually unsafe and dangerous; and (4) it must not be unreasonably harmful to public interest. The Legislature has delegated to the *Railroad Commission* the power to determine whether or not these four facts co-exist. If the *Commission* finds that they do, then, upon the statute being complied with, the railroad is required to build the track, otherwise not. The exercise of such power by the *Railroad Commission* is not the exercise of legislative power and may therefore be delegated to it. *State ex rel. M., St. P. & S. S. M. R. Co. v. Railroad Commission,* 137 Wis. 80, 117 N. W. 846; *Wayman v. Southard,* 10 Wheat. 1; *State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.,* 145 Wis. 337, 129 N. W. 600.

"Plaintiffs challenge the constitutionality of the statute on the ground that the side tracks provided for are private, and that land taken for right of way for such side tracks is taken for a private and not for a public use, contrary to the provisions of sec. 13, art. 1, of the constitution of this state, and contrary to the provisions of the XIVth amendment to the constitution of the United States. If it be conceded that the side tracks are private, then the objections raised by plaintiffs must be deemed well taken. But the case of *Chicago & N. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849, negatives such a concession. It was there held that the taking of land for a side track under sec. 1831a, Stats. (1898), was a taking for a public use, even though the side track ran to a single industry and the owners thereof were to bear a large part of the expense . . .

"Such track when built becomes a portion of the trackage of the railroad. The fact that its initial cost is borne by the party primarily to be served, with provisions for subsequent equitable division of such cost, does not make it a private track nor change the nature of its use. Over it the products of the industry find their way into the markets of the world, and every consumer is directly interested in the lessened cost of such products resulting from the building and operation thereof. That these products are supplied by a single owner, or by a limited number of owners, affects the extent and not the nature of its use—the track is none the

less a part of the avenue through which the commodities reach the public. Subject to the equitable division of initial cost, the track is at the service of the public as much as any other, and it constitutes an integral part of the railroad system. The duty to maintain and operate it rests upon the railroad. Except that it is relieved of the initial cost of right of way and construction, the track stands in the same relation to it that any other portion of its track does. The owner of the industry obtains no interest in or control over it beyond that of being served by it equally with any one else who may desire to use it. And this is the crucial test as to whether or not the track is a private or public one. If it is open to the use of any one who may desire, upon equal or equitable terms, and is subject to state control under general laws, it is a public track, irrespective of the degree of the probability of any one using it or the extent of such use. *Chicago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849; *Ulmer v. Lime Rock R. Co.,* 98 Me. 579, 57 Atl. 1001. That such tracks are to be open to the use of the public generally is clearly evidenced by the statute, for it speaks of the industry *primarily* to be served and makes provision for others securing the same service by sharing in the initial cost, thus evincing a clear intent to subject the track, upon equitable terms, to the use of any one who may require it. Its operation, too, is subject to state control under general laws, and neither the railroad nor the owner of the industry can in any respect interfere with such control." *Union Lime Co. v. Railroad Commission,* 144 Wis. 523, 129 N. W. 605.

Every element found by the supreme court of Wisconsin as making the act constitutional, namely, indemnity, reasonableness, necessity, safety, right of public use, compatibility with public interest, and control by the railroad subject only to state control, is provided for, safeguarded and guaranteed by our own statute and the order here involved. We are constrained to hold that this statute is not violative of the due process of law clause either of the state or of the Federal constitution.

III. The respondent contends that the spur ordered will interfere with interstate commerce and hence the order is

void as in conflict with § 8 of article 1 of the Federal constitution. Whether the operation of the spur will so interfere is, of course, a question of fact. We have examined the evidence with care, and we think it wholly fails to show any such interference with the usual and ordinary operation of the road as to have an appreciable effect upon its interstate business. The commission found, on what we deem sufficient evidence, that "such a spur is reasonable and practicable and can be put into operation with reasonable safety." The trial court made no contrary finding, but tacitly accepted the findings of the commission on questions of fact. There is no merit in the argument that, if this spur can be established, then every industrial plant along the road may rightfully demand one. The answer is, of course so, if the demand, after a hearing on notice, be found reasonable in view of all the surrounding conditions, including safety and the number, proximity and accessibility of other spurs; and of course not, if, on such hearing, the demand be found unreasonable from any cause.

The order of the commission is sustained. The judgment of the trial court is reversed.

CROW, C. J., FULLERTON, MAIN, and MORRIS, JJ., concur.