I cannot concur in the present judgment. These two cases arise as separate error proceedings to one action instituted in the court of common pleas of Muskingum county, Ohio. The judgment of the court of common pleas was in favor of the plaintiff, the Robinson-Ransbottom Pottery Company, and upon error proceedings instituted in the Court of Appeals of Muskingum county the judgment of the court of common pleas was affirmed. The defendants in error in the court below then filed separate petitions in error in this court.
The two error proceedings therefore arise upon the same record. The petition alleges in substance the following facts: The plaintiff, the Robinson-Ransbottom Pottery Company, owns and is in possession of certain real estate situated in Perry county, Ohio, and is the owner under deed from Orla Gordon and wife of a perpetual right of way for the purpose of a railway switch or siding across lands lying to the south of the premises in question, *Page 595 
the premises over which such right of way extends being a piece of ground 25 feet in width, formerly occupied by the tracks of the Cincinnati Muskingum Valley Railroad Company, and including such additional width of ground as may be necessary to make, construct, and forever maintain all necessary cuts and fills of a railroad track over such strip of ground. The deed conveying the premises to the plaintiff provides that the plaintiff, its successors and assigns, shall have full power and authority to enter into any contract or lease with any other parties for the construction and perpetual maintenance of railroad tracks, spurs, or switches over such premises for any and all purposes whatsoever, and further provides that the premises conveyed were intended to include a portion of the premises described in the conveyance of George W. Gordon to the Cincinnati Muskingum Valley Railroad Company under date of April 1, 1892. The petition alleges that the Pennsylvania Railroad Company claims to own this same right of way for a railroad switch or siding, but that such right of way was granted upon the condition that such siding or switch should not be used, except for the transportation of coal or any materials to be used in the opening of coal entries, or in or about the mining of coal, or in or about the construction of shanties or buildings for miners, and that since May 15, 1927, the defendants have used the siding or switch upon the right of way in question for the purpose of hauling materials and supplies for the construction of a gasoline filling station from the main track of the Pennsylvania Railroad Company to the filling station site of the defendants David Sagle and Roy *Page 596 
Sagle, in spite of plaintiff's protests, and that such defendants are using such switch and siding for the purpose of hauling tank cars filled with gasoline and storing the same on the switch or siding for long periods of time, thereby blocking the switch or siding and right of way, and prayed for injunction.
The Pennsylvania Railroad Company demurred to the petition upon the ground that it did not constitute a cause of action, and the defendants David Sagle and Roy Sagle, in a separate pleading, demurred to the petition upon the same ground. Each of these demurrers being overruled, the Pennsylvania Railroad Company filed an answer on its own behalf, and the defendants Sagle jointly filed an answer.
The answer of the Pennsylvania Railroad Company admitted the jurisdictional facts alleged in the petition, including its operation of a railroad over the switch or spur track in question, situated upon the right of way purchased by the Cincinnati Muskingum Valley Railroad Company from George W. Gordon and wife, which was conveyed to the Cincinnati 
Muskingum Valley Railroad Company by deed dated April 1, 1892, and duly recorded. The answer further admitted that such conveyance contained the condition set forth in the petition.
The answer further alleged that thereafter George W. Gordon and wife and others, upon June 20, 1910, by deed conveyed certain lands to the Nelson McCoy Sanitary Stoneware Company, together with the right to use such right of way and spur track "for the purpose of shipping and conveying over and upon the same all material, fuel, raw material and manufactured products, and all other things *Page 597 
necessary in the operation, conduct and maintenance of the business in which the said Nelson McCoy Sanitary Stoneware Company, its successors and assigns, shall be engaged.:"
The answer further alleged that on or about February 7, 1912, George W. Gordon and wife and others conveyed certain lands to the Wabash Pottery Company, together with certain rights or privileges in the same switch or spur track, which rights were described in such deed as "the right * * * to use * * * the Crescent mine switch and the right of way * * * for the purpose of shipping and carrying over and upon the same all material, fuel, raw material and manufactured products, and all other things necessary in the operation, conduct and maintenance of the business in which said Wabash Pottery Company, its successors and assigns, shall or may be engaged."
The answer further alleged that Orla Gordon and wife, in the conveyance executed August 23, 1916, to the Ransbottom Bros. Pottery Company, referred to in the petition, attempted to convey a portion of the same right of way upon which the spur track in question is situated, giving the Ransbottom Bros. Pottery Company full power and authority to enter into any contract or lease with any other parties for the construction and perpetual maintenance of railroad tracks, spurs, or switches over such premises for any and all purposes whatsoever.
The answer further pleaded in substance that the grantors in the deed of April 1, 1892, to the Cincinnati Muskingum Valley Railroad Company, and their successors in title, by subsequent conveyances, have waived the conditions and restrictions, if any, *Page 598 
contained in the conveyance to the Cincinnati Muskingum Valley Railroad Company; that the Pennsylvania Railroad Company is a common carrier of passengers and freight; that the spur track is a part of its railroad and that as a common carrier it is required to receive and transport all kinds of materials over and across such switch and spur track.
A third defense was also pleaded, which has been abandoned here.
The defendants David Sagle and Roy Sagle in their answer, after admission of the jurisdictional facts and allegations of the various conveyances above described, pleaded in substance that George W. Gordon and his successors in title had waived the conditions and restrictions, if any, contained in the conveyance to the Cincinnati Muskingum Valley Railroad Company, and that as a common carrier the Pennsylvania Railroad Company is compelled to transport all kinds of material over the spur track in question, which is a part of its railroad. In a further defense, filed as an amendment to their answer, David Sagle and Roy Sagle pleaded that shipments of all kinds of materials and supplies had for many years prior to the filing of the petition been delivered over and across such switch or spur track to various patrons of the companies near the line of such switch. They further pleaded that the condition in the deed limiting the use of such switch to the transportation of coal, etc., and for purposes incident to the mining of coal, is illegal and void upon the ground that such condition is contrary to public policy and discriminative in favor of certain classes of shippers, and is forbidden by the Interstate *Page 599 
Commerce Act (Title 49, Section 1 et seq., U.S. Code) and by the statutes of Ohio.
The reply admitted the conveyance to the Cincinnati 
Muskingum Valley Railroad Company and to the Robinson-Ransbottom Pottery Company, as set forth in the answers, admitted that the Pennsylvania Railroad Company operates a railroad and that the spur track extends westward from and is connected with such railroad, and denied every other material allegation in the answer. A reply was also filed to the amended answer of David Sagle and Roy Sagle, which does not affect the issues presented by the pleadings.
The petition prayed that the defendants the Pennsylvania Railroad Company and David Sagle and Roy Sagle be enjoined from using a certain switch or siding for any other purpose than the transportation of coal or material necessary to be used in the opening of coal entries, or in or about the mining of coal, or in or about the construction of shanties or buildings for miners or the mining of coal, and particularly from the transportation over such switch or siding of any gasoline or other material or supplies to the filling station of the defendants David Sagle and Roy Sagle, and that such defendants David Sagle and Roy Sagle be temporarily enjoined from the use of such siding or switch for any purpose whatsoever, and that upon final hearing the injunction be made perpetual.
The court of common pleas allowed the temporary injunction as prayed for, and in its final entry ordered that the injunction heretofore granted in the action be made perpetual. This judgment was affirmed by the Court of Appeals. *Page 600 
The record consists of an agreed statement of facts and the various deeds referred to in the pleadings, which establish that George W. Gordon and wife and Orla Gordon and wife are the predecessors in title of the Robinson-Ransbottom Pottery Company, the plaintiff below. The agreed statement of facts reads as follows:
"Parties to this case, both plaintiff and defendants, agree that the facts concerning the issues in this case are as follows and as disclosed by the exhibits attached hereto:
"1. The Ransbottom. Bros. Pottery Company was changed to the Robinson-Ransbottom Pottery Company.
"2. The Wabash Pottery Company never constructed a plant, and no shipments were ever made to it, as far as can be definitely determined.
"3. There has been no general use of said switch by the Nelson McCoy Sanitary Stoneware Company, excepting between its plant and the main track.
"4. Coal mine on the lands of Guy Bros. was known as the 'Crescent Mine,' and was situated at west end of switch shown upon Exhibit No. 1.
"5. Said mine was operated and coal and mine supplies were hauled over said switch until about October 1, 1927.
"6. Occasionally, merchandise of various kinds, namely, logs, lumber, brick, road building material, agricultural lime and building materials — all being other than mine materials — were shipped over that portion of the switch west of The Nelson McCoy Pottery, approximately 200 cars since April 1, 1892. *Page 601 
"7. The Nelson McCoy Pottery Company receive and ship approximately 500 cars of material, supplies and merchandise per annum, which cars are handled between its plant and the main track.
"8. The Southeastern Railway, when it was operating prior to 1925, shipped cars of poles and other material, which were placed upon the switch, near the eastern end of same.
"9. Henry Goodman took up the tracks and poles of the Southeastern Ohio Railway Company and loaded same at about the same point as mentioned in No. 8 hereof.
"10. Both the Cincinnati Muskingum Valley Railroad Company and the Pennsylvania Railroad Company were common carriers, engaged in both intrastate and interstate commerce.
"11. On June 1, 1927, prior to the filing of the petition herein, two cars of gasoline were ordered and in transit in interstate commerce to be delivered to defendants Sagle upon said switch.
"12. Defendants Sagle had constructed upon their land adjacent to this switch two tanks, with capacity of 33,000 gallons of gasoline, with appliances and equipment for unloading direct into said tanks from cars, which was done prior to the filing of the petition herein.
"13. The grade of the switch was changed by defendants Sagle under supervision of defendant railroad, so as to permit proper unloading of gasoline; said change being adjacent to property of defendants Sagle.
"14. Switch consists of single track with spurs at McCoy Sanitary Stoneware Company's plant and originally at said mine. *Page 602 
"15. The use of said switch by defendants Sagle was protested against by plaintiff, to both defendants Sagle and said railroad defendant. A letter of protest was written by plaintiff to defendant railroad and copy sent to defendant Sagle on or about November 12, 1926, which date was previous to the beginning of any actual construction by defendants Sagle upon their property, though material and equipment had been contracted for by defendants Sagle."
Under these facts, did the Court of Appeals err in granting the perpetual injunction?
The situation as developed by this record is that the railroad has an easement under the deed to the Cincinnati 
Muskingum Valley Railroad Company which is strictly limited in use, but that the subsequent grantees of the predecessors in title of the plaintiff below have easements unrestricted in use. Each of the subsequent grantees can ship, but the railroad company cannot without violating its contract haul the freight which they may offer. It is urged by the plaintiffs in error that this is a discrimination against public policy, and they cite various decisions for this proposition, such as State, exrel. Chicago, Milwaukee Puget Sound Ry. Co., v. PublicService Comm., 77 Wn. 529, 137 P. 1057, L.R.A., 1918B, 786, Ann. Cas., 1915D, 202; Union Lime Co. v. Railroad Comm. ofWisconsin, 144 Wis. 523, 129 N.W. 605; Union Lime Co. v.Chicago Northwestern Ry. Co., 233 U.S. 211, 34 S.Ct., 522,58 L.Ed., 924. The cases cited in general arise under condemnation statutes, and are not controlling in this controversy, which involves the use of a right of way for which condemnation proceedings were never and are not now instituted. *Page 603 
Judgment should, however, be rendered in favor of the plaintiffs in error upon another and distinct ground, namely, that the predecessors in title of the Robinson-Ransbottom Pottery Company waived the conditions contained in their deed to the predecessor of the railroad company. A right arising from contract may be waived. 27 Ruling Case Law, 904 et seq.
As stated by Davis, J., in the case of List Son Co. v.Chase, 80 Ohio St. 42, at page 49, 88 N.E. 120, 122, 17 Ann. Cas., 61:
"A waiver is a voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform."
Here the predecessors of the plaintiff below rendered impossible performance of the contract by the railroad, and hence waived the conditions made for their benefit in the original deed. Under the deeds executed by the predecessors of the Robinson-Ransbottom Pottery Company, subsequent to the original granting of the right of way, the railroad was required to receive and ship all manner of freight for the potteries, but was prohibited under its own contract from shipping anything but coal or from using the track for other purposes than those incident to the mining of coal. Moreover, the record shows that under the subsequent contracts of George Gordon and wife, predecessors of the plaintiff below, the spur track in question was actually used for a number of years in connection with the main line of the railroad for transportation of general freight. Since its predecessors in title rendered performance *Page 604 
by the railroad impossible, the equity of the situation favors the railroad.
The plaintiff below for a long period of time acquiesced in this situation, for the deed to the Robinson-Ransbottom Pottery Company was executed in 1916 and the agreed statement of facts shows that materials of all kinds have been shipped over the switch since 1892.
When George Gordon and wife gave to the Nelson McCoy Sanitary Stoneware Company and the Wabash Pottery Company the right to use the switch for transporting every kind of materials, they expressly waived the condition contained in the deed to the railroad company, because they made it impossible for the railroad company to perform that contract. Orla Gordon and his wife in their grant to the plaintiff below made a similar waiver. A condition or a limitation in a deed restricting or limiting to particular uses the property conveyed may be waived or abandoned by the subsequent conduct of the grantor, so that a court of equity will not interfere to prevent its violation. 18 Corpus Juris, 402. It is held that a restriction is waived or abandoned by conduct of the party in whose favor the restriction is made in making the restriction impossible of fulfillment, and thus inapplicable in its true intent and meaning. Thus, where restrictions have been imposed according to a general plan, one of the grantees of lots subject thereto, who has himself violated such restrictions, will not be heard in equity to complain against similar violations by other grantees. Where there is a general scheme of restrictions, and the grantor has permitted so many violations of the restrictions without objecting *Page 605 
thereto that the plan may fairly be said to have been abandoned, he cannot thereafter in equity object to a subsequent violation. Chelsea Land Improvement Co. v. Adams,71 N.J. Eq. 771, 66 A. 180, 14 Ann. Cas., 758; Duncan,Trustee, v. Central Passenger Railway Co., 85 Ky. 525,4 S.W. 228. The record shows no objection by George Gordon and his wife, by Orla Gordon and his wife, nor by the plaintiff below, to the hauling over a period of years by the railroad company for the Nelson McCoy Sanitary Stoneware Company and others, which violated the restriction in the deed. If the McCoy Pottery Company can require the railroad, as the record shows it has done, to use the spur track for the hauling of any sort of merchandise in violation of the railroad's restricted contract, then, having in view the obligations of a common carrier, must the Sagles be enjoined from exercising the same right as the pottery companies exercise to compel the railroad company to haul merchandise for them over this spur track?
The only proposition presented by this record is that of perpetually enjoining the common carrier from performing a service which under the law it is required to perform for all without discrimination. Under these circumstances equity ought not to interfere to prevent a violation of this contract, whose violation the plaintiff's predecessor required.
The case of Rodefer v. Pittsburg, Ohio Valley CincinnatiRailroad Co., 72 Ohio St. 272, 74 N.E. 183, 70 L.R.A., 844, cited by defendants in error, has no reference whatever to this decision. It deals with a mere revocable license, which did not purport to grant any interest in the land, and presents no problem of waiver. *Page 606