(June 6, 1903.)

# EVANS v. KROUTINGER.

[72 Pac. 882.]

FERRY FRANCHISE—VOLUNTARY TRANSFER—BY WHOM AUTHORITY CAN
BE QUESTIONED—ISSUES OF WIFE'S SEPARATE PROPERTY.

1. A ferry franchise may be voluntarily transferred the same as
any other incorporeal hereditament.

2. The franchise granting power retains the same control over the
franchise in the hands of the assignee as it does while it is still
exercised by the original grantee.

3. The franchise granting power alone can question the right
of the assignee of such franchise to exercise its rights and privi-
leges.

4. Under section 4479, Revised Statutes, the issue and profit aris-
ing from the investment of the separate property of the wife is not
liable upon execution against her husband.

(Syllabus by the court.)

APPEAL from District Court, Nez Perce County.   Honor-
able Ben. F. Tweedy, Judge pro tem.

Action by W. M. Evans to perpetually enjoin the sale of
a ferry franchise and boats, cables, etc., by A. W. Kroutinger,
sheriff, under execution.   Judgment for plaintiff.   Defend-
ants appeal from the judgment.   Affirmed.

The facts are stated in the opinion.

I. N. Smith, for Appellants.

A ferry franchise is not the subject of voluntary transfer.
No authority from the board of commissioners is shown to
have existed for the pretended sale of this franchise by Agatha
E. Evans and J. H. Evans to W. M. Evans.   The board of com-
missioners has never ratified the sale and no act is shown of
any pretended ratification at or prior to the rendition of the
judgment.   (See *Brunswick Gas Light Co. v. United States
Fuel etc. Co.*, 85 Me. 532, 35 Am. St. Rep. 385, 34 Atl. 416;
*Nixon v. Reid*, 8 S. Dak. 507, 67 N. W. 57, 32 L. R. A. 315;

*Snouffer v. Cedar Rapids Ry. Co.*, 118 Iowa, 287, 92 N. W. 79; *Oregon R. & N. v. Oregonian Ry. Co.*, 130 U. S. 1, 9 Sup. Ct. Rep. 409, 32 L. ed. 837; *Central Transfer Co. v. Pullman P. C. Co.*, 139 U. S. 24, 11 Sup. Ct. Rep. 478, 35 L. ed. 55.) Equity will not enforce contracts for transfer of same. (*Chicago Gas Light Co. v. People's Gas Light Co.*, 121 Ill. 530, 2 Am. St. Rep. 124, 13 N. E. 169.) The true remedy of a party injured by such contract is to disaffirm, and sue on *quantum meruit*. (*Pittsburg R. R. v. Keokuk*, 131 U. S. 371, 9 Sup. Ct. Rep. 770, 33 L. ed. 157; *Pennsylvania Ry. v. St. Louis Ry.*, 118 U. S. 290, 6 Sup. Ct. Rep. 1094, 30 L. ed. 83.) A married woman not a sole trader cannot acquire property which requires her to engage in business. The statutes of Idaho require the owners of ferry franchises to file a bond for the performance of their duties and to perform duties to the public. The public interests would preclude persons incapable of contracting from acquiring such interests because coverture, infancy, lack of capacity are always grounds of defense to the enforcement of contract. A married woman's right of contract is merged in her husband. (*Dernham v. Rowley*, 4 Idaho, 753, 44 Pac. 643.) She cannot engage in business unless she is declared a sole trader. (*McDonald v. Rozen*, 8 Idaho, 352, 69 Pac. 125.) Inasmuch, therefore, as the grant of a ferry franchise is upon the theory that the person to whom it is granted must enjoy it, it could not be granted to a married woman. The grant of a ferry franchise is a contract protected by the federal constitution; such grant results in a contract between a grantee and the state. ( See *Mills v. St. Clair County*, 2 Gilm. 197; *Dufour v. Stacey*, 90 Ky. 288, 29 Am. St. Rep. 374, 14 S. W. 48; *McRoberts v. Washburn*, 10 Minn. 23; *Benson v. New York*, 10 Barb. 223.) A married woman cannot acquire real estate by purchase except after she has been declared a sole trader, so as to make such property her separate estate. (*Alverson v. Jones*, 10 Cal. 9, 70 Am. Dec. 689; *Adams v. Knowlton*, 22 Cal. 284.)

Forney & Moore and Charles L. McDonald, for Respondent.

The right of the grantee of a ferry franchise to assign the same is confirmed by statute. (Idaho Rev. Stats., sec. 1125.)

In England ferry franchises have always been transferable
from the original grantee, either by conveyance, lease or descent, independent of the statute. (12 Am. & Eng. Ency. of
Law, 2d ed., p. 1098.)    And such also, by the weight of authority, is the rule in the United States. (*Bourman v. Wathen,*
2 McLean, 376, 3 Fed. Cas. No. 1740; *Rohn et al. v. Harris
et al.,* 130 Ill. 525, 22 N. E. 587; *Montgomery v. Multnomah
Ry. Co.,* 11 Or. 344, 3 Pac. 435; *Francis B. Fay et al., Petitioners, etc.,* 15 Pick. 143; *Dufour v. Stacey,* 29 Am. St. Rep.
374, and cases cited; *Jeffersonville v. Louisville etc. Ferry Co.,*
27 Ind. 100, 89 Am. Dec. 495; *Michigan Telephone Co. v. St.
Joseph,* 121 Mich. 502, 80 Am. St. Rep. 520, 80 N. W. 383,
40 L. R. A. 87; *Patrick v. Ruffners,* 2 Rob. (Va.) 209, 40 Am.
Dec. 740; *Oakland R. R. Co. v. Oakland etc. R. R. Co.,* 45 Cal.
365, 13 Am. Rep. 181.)

AILSHIE, J.—This suit was commenced on September 4,
1902, by the plaintiff, W. M. Evans, filing his complaint praying a perpetual injunction against the defendants, A. W.
Kroutinger, as sheriff of Nez Perce county, and Geo. H. Kester
and W. F. Kettenbach, as judgment creditors, enjoining the
sale of certain property upon execution.   Defendant answered
and the cause went to trial before Honorable Ben. F. Tweedy,
judge *pro tem,* and resulted in a judgment in favor of plaintiff perpetually enjoining said sale.    Defendants appealed from
the judgment.

The facts appear as follows: J. H. Evans, a white man, and
Agatha E. Evans, an Indian woman of the Nez Perce tribe, are
husband and wife, and have been such ever since 1884.   In
1894 Agatha E. Evans established a ferry across Clearwater
river in Nez Perce county at a point called "Evans Ferry,"
without obtaining therefor any authority or franchise save the
"permission" of the Indian agent then in charge of said reservation.

The trial court finds that the boat, cables, ropes, landings,
etc., were purchased and acquired by Agatha E. Evans "with
money that she received from the United States government as
payment for her interest in said Nez Perce Indian Reservation

which she owned by reason of being a member of the tribe of Nez Perce Indians." There is evidence in the record sustaining this finding and it necessarily follows that the property thus acquired became the separate property of Agatha E. Evans. She caused the ferry to be operated from 1894 until July 15, 1900, at which time she and her husband entered into a parol agreement with the plaintiff, W. M. Evans, for the sale to him of all rights therein and a part of the purchase price was paid and the plaintiff was thereupon let.into the possession of all said property. It was agreed that plaintiff should operate the ferry in the name of Agatha E. Evans until the balance of the purchase price should be paid, and that thereupon he should receive a deed from her and her husband for the property. On January 16, 1902, the deed was executed and delivered to plaintiff and he took out a ferry license for that year in his own name. During the years from 1896 to 1899, inclusive, and the year 1901, the annual license was taken out in the name of Agatha E. Evans. December 15, 1900, a judgment was duly rendered and entered in the district court in and for Nez Perce county, in favor of defendants, Geo. H. Kester and W. F. Kettenbach and against J. H. Evans, for the sum of $660.78, and on August 2, 1902, execution issued for the collection of said judgment, and acting thereunder, the defendant sheriff levied upon the ferry in question and noticed the same for sale. It is to restrain such sale that this suit was instituted.

No express franchise was ever granted anyone by the board of county commissioners authorizing the construction, maintenance, or operating this ferry, but it is vehemently contended by counsel for appellants that a franchise was acquired by prescription, and that such franchise became community property and was liable for the judgment under which execution issued. There is a great diversity of opinion among the American authorities upon the question of adverse user maturing into title as. against the state or franchise granting power. The view we take of the matters here in controversy makes it unnecessary for us to pass upon this point, for the reason that if appellant is correct as to his position, this prescriptive right and

title is the legitimate issue and profit arising from the investment of the separate property of Agatha E. Evans, and not liable upon execution against her husband. (Rev. Stats., sec. 4479.) It would naturally grow out of the investment and continued user of the separate estate of the wife, which could not have ripened into a right or title without the investment and user of property which was necessary to the inception of such right and its maturity into a vested estate. On the other hand, if no such right can arise by prescription, no franchise was ever acquired, and Agatha E. Evans was simply exercising the privileges incident to a ferry franchise by sufferance of the franchises granting power. In such case, upon a sale of the ferry the purchaser would take no greater estate, than she possessed, and he would likewise be without a franchise. If he has no franchise, then he is without the protection of the one mile limit both up and down the stream from the site of his ferry which constitutes the only real value in such a grant. (Rev. Stats., secs. 1080, 1130.)

The right to collect tolls follows both the franchise and the license, while the license alone protects the licensee from liability to fine under section 1128, Revised Statutes.

Counsel argues that under the authority of *McDonald v. Rozen,* 69 Pac. 125, decided by this court, a married woman cannot acquire separate property, which would require the carrying on and conducting a business until she is declared a sole trader. We cannot agree with counsel's construction of that authority. The point there decided was the right of the wife to recover damages for the loss of future and prospective profits from a business she was conducting without having been adjudged a sole trader.

It is contended, however, that if a prescriptive franchise, or any franchise, had been acquired, that the title could not pass by voluntary transfer; that such title cannot be voluntarily assigned to another. This is also a question upon which the decisions of our courts are not in harmony. In 12 American and English Encyclopedia of Law, second edition, 1098, the author makes the following statement in the text: "In England ferry franchises have always been transferable from the orig-

inal. grantee, either by conveyance, lease or descent, and such also, by the weight of authority, is the rule in the United States. In a number of states, however, it is held that ferry franchises are not transferable, these decisions being based on the ground that the franchise involves a personal trust, granted by the sovereign upon condition imposed on the grantee alone, whose liability cannot be removed by substitution."

: That such a franchise is transferable has been expressly held in New York, Michigan, Massachusetts, Iowa, Illinois, Missouri, North Carolina and Vermont; while in many other states the point has been considered by the courts but still appears to be an open question.

In *Knott v. Frush,* 2 Or. 237, it was held that the franchise expired upon the death of the grantee and could not descend to his heirs. Mr. Justice Lord questions the doctrine there announced in *Montgomery v. Multnomah Ry. Co.,* 11 Or. 344, 3 Pac. 435, and reviews the leading American authorities bearing upon the subject. An examination of those decisions and the statutes under which they were rendered will disclose the fact that no state holding these franchises nonassignable has a statute similar to our section 1123, Revised Statutes, authorizing their attachment and sale on execution. Again, sections 1125 and 1126, Revised Statutes, in imposing duties on the holders of ferry franchises refer to them as "the grantees and their assigns." We know of no instance either in our statutes or the decisions of our courts where the word "assigns" has been applied to a purchaser at execution sale.

· The California cases to which we are cited (*Munroe v. Thomas,* 5 Cal. 470; *Thomas v. Armstrong,* 7 Cal. 286; *Wood v. Truckee Turnpike Co.,* 24 Cal. 474, and *People v. Duncan,* 41 Cal. 510) arise out of sales, or attempted sales, of franchises on execution; and it is there expressly announced that there was no statute in that state authorizing a levy upon and sale of such franchise.

· In *Lippencott v. Allander,* 27 Iowa, 460, 1 Am. Rep. 299, the question arose as to whether a ferry franchise was vacated by the death of the party to whom it was granted, and the court held that it was not; but that it survived and passed to his

.representatives. The statute of Iowa authorized a sale of such franchise upon execution, and upon that branch of the case the court said: "And that the positiòn of appellant is not in accordance with the policy of our statutes is made very plain by the provisions ·permitting and regulating the sales of the franchise upon execution. In such case the purchaser, ·by substitution,· assumes the duties of the original grantee and acquires all his rights. No reason can be given why the law will permit this, and yet prohibit the exercise of the franchise, in case of the death of the grantee, by his representatives. The doctrine contended for leads to another inconsistency, namely, the franchise may be subjected to the payment of the debts of the grantee in his lifetime, but is not assets for the payment of the same debts after his death."

We might carry this reasoning further and say that no good reason appears why a creditor, by forced sale, may devest the grantee of such a franchise of his title and at the same time prohibit the debtor from the voluntary parting with his title in payment of the same debt. In this state there are no restrictions upon the sale and transfer of any property right which may be acquired, only that it be a *bona fide* transaction. A ferry franchise is an incorporeal hereditament and assumes a dual nature. It· not only becomes the private . property of the grantee, but is subject to regulation from the power granting the right and in so far is *publici juris*. The governing power can exercise the same control over the grant when in the hands of the assignee as it could while enjoyed by the original grantee. (See *Dufour v. Stacey,* 90 Ky. 288, 29 Am. St. Rep. 374, 14 S. W. 48.)

If the contention of appellants were true as to the power of voluntary transfer, still we do not think they are in a position to complain. The franchise granting power alone can question this right. (12 Am. & Eng. Ency. of Law, 2d ed., · 1099; *Patrick v. Ruffners,* 2 Rob. 209, 40 Am. Dec. 740; *Oakland R. R.· Co. v. Oakland etc. R. R. Co.,* 45 Cal. 378, 13 Am. Rep. 181; *Appeal of Johnson et al.,* 95 Pa. St. 78; *Hackett v. Multnomah Ry. Co.,* 12 Or. 127, 53 Am. Rep. 327, 6 Pac. 659; *Hackett v. Wilson,* 12 Or. 37, 6 Pac. 652. See same case under

different title, *Montgomery et al. v. Multnomah Ry. Co.*, 11 Or. 344, 3 Pac. 435.)

Numerous other, collateral and incidental questions are discussed in the briefs of appellants, and we have carefully, and with no small amount of labor, examined them all, but we do not think it necessary to pass upon any other matters in this opinion. The conclusions herein reached dispose of the case. The judgment must be affirmed, and it is so ordered. Costs awarded to respondent.

Sullivan, C. J., and Stockslager, J.. concur.