[No. 9316.   Department One.   March 27, 1911.]

THE STATE OF WASHINGTON, *on the Relation of James Clark,* *Plaintiff,* v. THE SUPERIOR COURT FOR CLALLAM COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC SERVICE—TOLL LOGGING ROAD. The power of eminent domain is not conferred for private purposes, by Rem. & Bal. Code, §§ 7106-7109, granting the right to toll logging roads, chutes, flumes, and artificial water courses for the carriage of timber products, under the requirement that the road transport all timber products offered for carriage as its means of transportation is adapted to carry, and providing that such roads shall be deemed *quasi* public companies and common carriers; and the fact that its duty is limited to the carriage of timber products does not affect the public character of the service.

EMINENT DOMAIN—LOCATION OF ROUTE—NECESSITY FOR TAKING. Condemnation for a toll logging road cannot be objected to on the ground that no necessity is shown for condemning the particular route surveyed; since the company can make its own selection.

EMINENT DOMAIN—PROCEEDINGS—CORPORATIONS—PROOF OF INCORPORATION—EVIDENCE—SUFFICIENCY. In condemnation proceedings, the triplicate copy of the articles of incorporation, held in the office of the company, is sufficient evidence of the incorporation; and a certificate and receipts of the secretary of state showing the filing of the articles and payment of filing and license fees are *prima facie* proof of its existence; Rem. & Bal. Code, § 3682, making a certified copy of the articles *prima facie* proof, not being exclusive.

[1]Reported in 114 Pac. 444.

EMINENT DOMAIN—PUBLIC SERVICE—TOLL LOGGING ROAD. The fact that all the stock of a toll logging road is held by a lumber company or its stockholders who own most of the timber accessible to the road sought to be condemned, does not deprive the road of its public character or render the enterprise a private one, where considerable other timber owned by others will be rendered accessible and can be transported over the road.

Certiorari to review a judgment of the superior court for Clallam county, Still, J., entered December 16, 1910, adjudging a public use and necessity in proceedings to condemn a right of way for a logging road. Affirmed.

*R. C. Wilson*, for relator.

*Trumbull & Trumbull*, for respondents.

PARKER, J.—The relator has brought here by writ of review, and seeks to have reversed, an adjudication of public use and necessity, rendered by the superior court for Clallam county against him and in favor of the Port Crescent Timber Transportation Company, in an eminent domain proceeding commenced by that company to acquire a right of way over land of the relator for a toll logging road. The company claims the right to so acquire a right of way over the relator's land by virtue of the power of eminent domain granted by chapter 82, p. 161, Laws of 1905, being Rem. & Bal. Code, §§ 7106-7109.

It is contended by counsel for relator that in so far as this law authorizes the taking of private property for the use therein specified it is unconstitutional, in that such defined use is not in fact a public use. The provisions of the law are as follows:

"Section 1. Any two or more persons may incorporate a company, having for its principal object the construction, maintenance and operation of logging roads, chutes, flumes and artificial watercourses, or waterways and other ways, for the transportation of logs and other timber products. Such corporation shall have power to acquire, hold, use and transfer all such real and personal property as shall be reasonably necessary for carrying on the business of such corporation.

"Sec. 2.   Such corporation shall have power to build, construct, maintain and operate logging roads, whether skid roads, railroads or any other kind, also chutes, flumes and artificial watercourses, waterways and other ways, for the transportation of logs or any other timber products, together with all necessary yarding grounds, rollways and landings.

"Sec. 3.   After any such logging road, way, chute, flume or artificial watercourse or other improvements shall have been constructed, such company shall transport all timber products offered to it for carriage as its means of transportation are adapted to carry, and such company shall have the right to charge reasonable tolls for the use thereof, which tolls shall be uniform, having due regard to the portion or length of any such logging road, way, chute, flume, or artificial watercourse or other improvements used by any person.   Such company shall have a lien for the amount of its reasonable tolls and charges upon any and all logs or other timber products transported by it over its logging road, way, chute, flume or artificial watercourse.   Notice of such lien shall be filed, and the same shall be enforced, in the same manner as is now or may hereafter be provided for the filing and enforcement of liens on logs by boom companies.

"Sec. 4.   Such companies shall be deemed *quasi-* public companies and common carriers, and any such company shall have the right of eminent domain and shall have the right to appropriate and condemn lands and property for its use. Such right of condemnation and of eminent domain shall be exercised in the same manner as is now, or may hereafter be, provided by law for the condemnation of property by ordinary railroad corporations exercising the right of eminent domain: *Provided,* That the right of eminent domain shall not be exercised by any such corporation with respect to any residence.   *And provided further,* That any property acquired by such corporation under the provisions of this act by the exercise of the right of eminent domain shall be used exclusively for the purposes of this act; and whenever the use of such property as herein contemplated shall cease for the period of one year, the property shall revert to the original owner, his heirs or assigns.   Nothing in this act shall be construed to authorize the taking or damaging of any power plant constructed or being constructed for the creation or utilization of water power."

These provisions seem to leave no uncertainty as to the service which may be required by the public of a corporation organized thereunder. The language defining the public service obligation is, such company *"shall transport all timber products offered to it for carriage as its means for transportation is adapted to carry."* And it is further provided that *"such companies shall be deemed quasi public companies and common carriers."* The argument of counsel for relator, touching the question of public use as defined by this law, is based upon the fact that such corporations are only required to carry *"timber products."* It is insisted that this required service is so limited that the whole public cannot command the service of the corporation. It seems to us that the whole public can command the service of the corporation in the business in which it is engaged and authorized to carry on. Every person desiring to ship timber products over such road may require the corporation to carry such timber products under exactly the same conditions. This is certainly a public service, and we are not able to see that it is any less a public service because the corporation is a common carrier of a particular class of property. Every public service corporation is engaged in a business which is more or less limited in character. The fact that such business is so limited does not change its character, so far as the right of the public to command the service of the corporation in its particular business is concerned. An express company is generally a common carrier of a particular class of property. A street or interurban railway company may be a common carrier of passengers only. No one would contend that such companies are not public service corporations because of the limited character of their business. This court has recognized boom companies as public service corporations, and such companies, as organized under the laws of this state, are engaged in a business the character of which is confined within just as narrow limits as is the business of corporations organized under this law. Boom companies being public service cor-

porations, their right of eminent domain, under legislative grant, has been recognized by this court. *North River Boom Co. v. Smith*, 15 Wash. 138, 45 Pac. 750; *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820; *State ex rel. Wilson v. Superior Court*, 47 Wash. 397, 92 Pac. 269.

In the case last cited, at page 401, the court said: "The right to condemn is determined by this right of the public to demand the service so as to make necessary the appropriation sought." We are of the opinion that the public service required of corporations organized under this law is sufficient to support the legislative grant therein of their right of eminent domain, and the law is not unconstitutional because of the limited character of the service required.

It is contended that there was no proof of the necessity to take the particular land described in the petition. The proof shows that the line of the proposed road was surveyed and located by agents of the company on the line described in the petition. The contention does not seem to be against the quantity of land sought to be taken as a right of way, but that the necessity of adopting the particular route so located is not proven. This objection is not available to the relator. The rule upon this subject is stated in 2 Lewis on Eminent Domain (3d ed.), § 604, as follows:

"It may be objected that there is no necessity of condemning the particular property, because some other location might be made or other property obtained by agreement. But this objection is unavailing. Except as specially restricted by the legislature, those invested with the power of eminent domain for a public purpose, can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts."

It is contended that there was no legal proof of the incorporation of the company or of the contents of its articles of incorporation. There was offered in evidence articles of incorporation purporting upon their face to be one of the trip-

licates executed by the incorporators on August 18, 1910. Oral evidence was admitted to prove that this paper is in fact one of such triplicates; that it is the one retained in possession of the corporation; and that the others were filed respectively in the office of the secretary of state and the county auditor. These articles clearly show that the corporation was organized under this law. There was also offered in evidence the certificate of the secretary of state issued in usual form, to the effect that the articles of incorporation of the "Port Crescent Timber Transportation Company" were, on the 20th day of August, 1910, filed in the office of the secretary of state. There was also offered in evidence a receipt from the secretary of state showing payment of his fees for filing and recording articles of incorporation of this same company, and also showing payment of its license fees. All of this evidence was objected to as not being legally sufficient to prove the incorporation or the contents of the articles. The contention of counsel is rested upon Rem. & Bal. Code, § 3682, which provides:

"A copy of any certificate of incorporation filed in pursuance of this chapter, and certified by the auditor of the county in which it is filed, or his deputy, or by the secretary of state, shall be received in all the courts and places as *prima facie* evidence of the facts therein stated."

We think, however, that this does not mean that such certified copies shall be the only competent proof of the existence of a corporation or of the contents of its articles of incorporation. We think that the triplicate of the original articles of incorporation, retained in the possession of the company as the law requires, was sufficient to show their contents without further proof, and that the other evidence offered was sufficient *prima facie* proof of the existence of the corporation.

It is contended that since all of the stock of the Port Crescent Timber Transportation Company is held by a timber company or its stockholders, which company is the owner of

the largest part of the timber accessible to the line of the proposed road, which timber that company will be enabled to transport to market by the building of the road, the enterprise is in fact a private enterprise, and that the taking of this land for right of way for the proposed road is really taking it for the private use of the timber company. Conceding these facts to be established by the evidence, we think the evidence also establishes the fact that considerable other timber will be rendered accessible to this road and that other people and corporations than the timber company will be in position to demand transportation service from the company. It was said by Judge Rudkin, speaking for the court in *State ex rel. McIntosh v. Superior Court*, 56 Wash. 214, 105 Pac. 637, that,

"The fact that private individuals or private corporations having a special interest in the construction of a railroad subscribe to its capital stock does not deprive the road of its public character. The road when constructed will be a public service corporation and must serve the public, regardless of the individuality of its stockholders or the business in which they may be engaged."

We are of the opinion that the adjudication of public use and necessity should be affirmed. It is so ordered.

DUNBAR, C. J., MOUNT, GOSE, and FULLERTON, JJ., concur.