[No. 20278.    Department Two.    February 4, 1927.]

THE STATE OF WASHINGTON *on the Relation of McPherson Bros. Company, Plaintiff,* v. THE SUPERIOR COURT FOR DOUGLAS COUNTY *et al.,* *Respondents.*[1]

[1] EMINENT DOMAIN (39)—EXERCISE OF POWER—NECESSITY FOR APPROPRIATION. Findings of public necessity for a bridge across the Columbia River, near the site of a ferry, are sustained where it appears that the community is growing, that there is no other bridge for many miles, that there is delay and congestion on the ferry, that the inhabitants generally desire it, and that the point is an important center connecting different main routes of cross-state travel.

[2] EMINENT DOMAIN (44)—FRANCHISES (4)—PERSONS ENTITLED TO QUESTION POWER—EXCLUSIVE FRANCHISE. An exclusive franchise or right to operate a ferry across a river does not preclude condemnation for the establishment of a bridge at or near the same place, when the convenience of the public will be better served and the bridge is a public necessity, in the absence of any statute expressly providing that the exclusive ferry franchise shall apply to exclude bridges as well as other ferries; and this, notwithstanding the bridge may greatly interfere with the traffic and business of the ferry.

[3] FRANCHISES (1-1)—STATUTORY PROVISIONS—COUNTY FRANCHISE FOR TOLL BRIDGE. Under Rem. Comp. Stat., § 6441, a franchise to operate a toll bridge over a county boundary line stream, granted by the county commissioners of both counties, is valid, without any license from town authorities.

[4] EMINENT DOMAIN (104)—PROCEEDINGS—CONDITIONS PRECEDENT—FRANCHISE. In condemnation proceedings for a toll bridge, the procurement of a franchise after suit brought will sustain the suit.

[5] FRANCHISES (1-1) — STATUTORY PROVISIONS — COUNTY TOLL BRIDGES. Objection to the validity of a county franchise for a toll bridge because it is partly within the limits of a town is obviated by a change in the town boundaries placing the bridge outside the town limits.

[1]Reported in 252 Pac. 906.

[6] SAME (6)—ASSIGNMENT. A bridge franchise is assignable where the federal consent and the county franchise both ran to the grantee, his heirs, executors, administrators and assigns.

[7] EMINENT DOMAIN (44)—FRANCHISES (4)—PERSONS ENTITLED TO QUESTION POWER—FRANCHISE RIGHTS. Condemnation for a toll bridge cannot be objected to because a ferry company was already engaged in the business of transferring passengers and freight across the river at the same place.

Certiorari to review a judgment of the superior court for Douglas county, Parr, J., entered September 8, 1926, sustaining an adjudication of public use and necessity, in proceedings to condemn an easement for a toll bridge. Affirmed.

*Peter McPherson, J. Henry Smith, P. D. Smith,* and *W. C. Gresham,* for relator.

*Hartman & Hartman, O. R. Hopewell,* for respondents.

BRIDGES, J.—This is an eminent domain proceeding. The Okanogan-Douglas Inter-County Bridge Company, a corporation, is desirous of constructing a toll bridge across the Columbia river, running from the town of Brewster, in Okanogan county, on the north, to the opposite shore in Douglas county, and there to connect with an established and improved county road. For this purpose it brought two condemnation suits. The one in Okanogan county seeks to establish the necessity for the bridge and to condemn and appropriate the state's tidelands. In that case only the state was made a party defendant, but before trial McPherson Bros. Company, a corporation, was permitted to and it did intervene. In this case, which the bridge company instituted in Douglas county, only McPherson Bros. Company was made a defendant. The reason for suing that company only in this suit appears to be that the bridge approaches on the Douglas county side of the

river will occupy a portion of some land belonging to
the McPherson Bros. Company, that land being located
at a point between the ordinary high water of the river
and the county road which runs close to the river bank.
In this suit as defendant, and in the Okanogan county
suit as an intervener, the McPherson Bros. Company
raised many objections to the maintenance of the suit
by the bridge company.

It appears that, for many years past, it has operated,
and still does operate, a ferry across the Columbia
river. It is about one thousand one hundred feet down
the river from the proposed bridge location. It would
appear that the bridge company does not seek to take
or damage any lands or property of the McPherson
Bros. Company located on the Okanogan county side
of the river, but does seek to take a small strip of land
belonging to that company on the Douglas county side.
Both cases have been tried on the question of the ne-
cessity and the right to condemn, and in each a judg-
ment has been entered granting that right. Both cases
have been brought here for review by means of a writ
of certiorari. While the two cases were separately
tried and are here separately docketed, they were pre-
sented to us as one case because practically the same
questions arise in both.

It is claimed that the court erred in entering its de-
cree of necessity for the following reasons: Because
it did not find and adjudge that the relator has an ex-
clusive ferry franchise; that the bridge company has
no authority to condemn for the reason that a part of
the bridge is within the corporate limits of the town
of Brewster and that the bridge company has not ob-
tained any license in that town; for the reason that
the capital stock of the condemning company had not
been fully subscribed before the commencement of the
action; for the reason that such franchises as the

bridge company has, it obtained by assignment from
one Buell, and that franchises of this character may
not be lawfully assigned; because such franchises are
void; because the bridge company has no permit from
the United States government to construct a bridge
at the point in question; because the court erred in
refusing to hear testimony as to the amount of tolls
the bridge company intended to charge and, under its
franchises, was entitled to charge; because to permit
the construction of the bridge would interfere with
relator's rights, in violation of art. I, § 10, of the con-
stitution of the United States, and art. I, § 23, of the
constitution of the state of Washington; because to per-
mit the bridge to be constructed and operated would
interfere with the use of the ferry, which it is claimed
is an exclusive use, and would take much of the busi-
ness it now enjoys; and because the testimony was in-
sufficient to show the necessity for the construction and
operation of the bridge.

We will not undertake to dispose of these questions
in the order given, but will discuss them as they occur
to us.

[1] We are satisfied that the testimony was amply
sufficient to show a public necessity for the construc-
tion and maintenance of the bridge. There is a great
deal of traffic in the neighborhood. The neighboring
lands have been extensively put to valuable orchards.
There is no other bridge across the river for many
miles in either direction. The community is growing
rapidly. There are at times considerable delays in
getting across the river by means of the ferry. When
the traffic is heavy there is congestion. The great ma-
jority of the witnesses called were of the view that the
bridge was much to be desired and that the public in-
terest required it. In a memorandum opinion, the trial
court, who was, of course, very familiar with the whole

subject, stated that the town of Brewster was the gateway between the Okanogan county country and Canada on the north, and Spokane and the Big Bend country on the south, and that "there is no question but present conditions demand the construction of a bridge at Brewster to meet the demands and the necessities of the public." The testimony is very long and we do not believe any good purpose would be served by further detailing it in this respect. Suffice it to say, that we think it is amply sufficient to show that the public convenience and requirements demand the construction and operation of the bridge.

[2] It will be remembered that the bridge is some one thousand one hundred feet up the river from the ferry crossing. It will not in any wise interfere with the actual operation of the ferry. But relator contends that, because it has an exclusive franchise to operate this ferry and because the bridge will deprive it of much of the business it otherwise would get, it should be protected against competition. In other words, its contention, as we understand it, is that its right to transfer passengers and freight across the river at the point in question is property and its franchise in that respect is exclusive, and that these rights cannot be interfered with in the contemplated manner. In the first place, there is no showing that the state or any subdivision of it has ever given to relator any franchise to operate a ferry at or near the point in question. Indeed, there has not been pointed out to us, and we have not found, any legislative act authorizing private parties to operate a ferry across a stream which is the boundary between two counties. The statutes with reference to ferries are Rem. Comp. Stat., §§ 5462 to 5483, both inclusive, [P. C. §§ 2388 to 2409]. Those sections provide for ferries operated by private parties over streams or lakes wholly within the boundaries

of any county; for ferries to be operated by cities over waters within one mile of the city; for ferries across streams which divide two counties, to be owned and operated by the two counties; for ferries across streams which form the boundaries of two states, or counties in two states. There may be other statutes affecting this matter. We have not made an exhaustive search, because our decision is not to be based on the point.

Relator's idea is, that if these points are conceded, yet as a fact, it has actually operated the ferry for many years and has been regulated and recognized by the state and the adjoining counties, and that because thereof it now has an exclusive right to operate the ferry at the point in question and that no person can question that right unless it be the state, and that it has at least a prescriptive right. There appears to be some authority to support the relator's contention in this respect. 11 R. C. L. 916. But we do not find it necessary to discuss or decide the question. For the purposes of this case, we will assume that relator is in the same position as it would be had it obtained from the state or from other proper authority a legal license to operate its ferry, and that it is now lawfully operating thereunder. We may go further and assume that the grant is an exclusive one at or near the point on the river. Certainly this is as favorable to relator as it could ask, and probably more so than the facts will justify.

It does not follow that, because relator has a lawful right to operate this ferry, a bridge may not also be maintained and operated in the same locality, notwithstanding it may take from the ferry much of the traffic it would otherwise have. In this day and age of progress and advancement, it will not do to hold that a

more convenient and rapid way of getting across great streams than by ferry may not be authorized by the public authorities, when public convenience and welfare demand, simply because such new way may make the ferry franchise right less valuable and less profit-able. The right to ferry or bridge across a river is primarily in the interest of the public, and not of the bridge or ferry owner. The thing that we should look to in a case of this character is the public, and not a private interest. It is possible that the relator has such right as that the courts would protect it against competition from another ferry, but, if so, it would not follow that it should be likewise protected against competition by means of a bridge which manifestly serves the public interest much better and in a different way than is possible by ferry.

In 20 C. J. 704, it is said that:

"Where the grant is not by its terms exclusive, the legislature is not precluded from granting a similar franchise or authorizing the construction of a rival way or structure which may greatly impair or even totally destroy the value of the former grant, and such damage is not a taking of the former franchise which entitles its owner to compensation."

In *Dibden v. Skirrow*, [1908] 1 Ch. 41, 12 A. & E. Ann. Cas. 252, the English court held that the franchise of a ferry is not a grant of an exclusive right to carry freight and passengers across a stream by all means whatsoever, but only a grant of the exclusive right to carry by means of a ferry, and the construction of a bridge, connecting the same highways as the ferry and causing the ferry owner to lose all the income he formerly received from tolls, is not a disturbance of the ferry, and its owner has no remedy. The case of *Mason v. Harper's Ferry Bridge Co.*, 17 W. Va. 396, was one where a ferry owner sought

damages because of a bridge which took away much of his traffic. The court there seems to have held that the mere fact that one had a ferry privilege or franchise did not forbid the same government that granted that franchise from authorizing a bridge to be constructed in the immediate locality of the ferry and which would greatly interfere with its business, and that while the bridge would not be a taking of any ferry rights, it would be a damaging within the constitutional provision. A similar case is that of *Piatt v. Covington and Cincinnati Bridge Co.*, 71 Ky. 31. It was there held that, although the ferry was the first means of transportation across the river, it was lawful to authorize the construction of a bridge in the immediate vicinity, and that, if the bridge did not actually take or interfere with any of the ferry owner's property, there could be no recovery of damages. In *Richmond & Lexington Turnpike Road Co. v. Rogers*, 1 Duvall, 135, the Kentucky court held that, where the construction of a bridge will not interfere with any physical enjoyment of the ferry franchise across the same river, the owners of the ferry are not entitled to compensation for any incidental impairment of profits resulting merely from the use of the bridge instead of the ferry by the public. See, also, to the same effect, *Hydes Ferry Turnpike Co. v. Davidson County*, 91 Tenn. 291, 18 S. W. 626.

Relator's rights would not be exclusive unless made so by statute, and we find nothing in our legislation on that subject except § 5475, which is with relation to ferries over streams wholly within a county. But, in any event, relator's right would be exclusive only as against competition by a rival ferry. Even if the legislature had expressly granted the relator an exclusive ferry right at the point in question, that would not prohibit the state from afterwards granting others

the privilege to erect a bridge near the ferry. We should not hold the ferry franchise to be exclusive as against a bridge, unless the legislature has expressly so provided. Implication is not enough. We cannot assume that the state intended to so hamper progress and surrender the interests of the people. *Charles River Bridge v. Warren Bridge,* 11 Pet. 420, 9 L. ed. 773; *Jones v. Keith,* 37 Tex. 394, 14 Am. Rep. 382, 4 R. C. L. 204.

We are cited to *Norris v. Farmers' & Teamsters' Co.,* 6 Cal. 590, 65 Am. Dec. 535, and *Gates v. McDaniel,* 2 Stewart (Ala.) 211, 19 Am. Dec. 49, as holding that a bridge which interferes with the business of a prior ferry is unauthorized and unlawful. These were injunction suits. It would seem that the case last cited so holds, but the first may be easily distinguished. The bridge there involved was erected under proper authority, and later a ferry, without any authority from the state, was established in the immediate vicinity of the bridge, and the owners of the latter sought to enjoin the operation of the former. The injunction was granted, but apparently for the reason that the ferry was an unauthorized one. Presumably the court would have denied the injunction had the ferry been authorized by the public authorities.

We hold that where there is a duly licensed and authorized ferry, the public authorities may also authorize a bridge in the same locality, notwithstanding the latter may greatly interfere with the traffic and business of the former, particularly if it be determined that the public welfare demands the bridge. We are not here interested in, nor do we determine, whether the relator is entitled to recover damages or compensation from the bridge company merely because the bridge will lessen the value of the ferry franchise and take away profits which it otherwise would make. This

case is here now solely on the question of the public necessity, that is, whether the bridge should be built, and not upon the question of compensation to be made. That matter will arise when this case is returned. Under our practice there are two branches to every condemnation proceeding. The court must first adjudge whether there is a public necessity for the construction of the bridge or the doing of whatever is sought to be done. That decree may be reviewed in this court only by a writ of certiorari, and if it then be determined that the public convenience requires the prosecution of the enterprise, there is a further hearing whereby the amount of compensation or damage is determined. Since we are reviewing only the decree of necessity, the question whether compensation must be made is not before us.

We can more briefly dispose of the other contentions that are made by relator.

[3]   Rem. Comp. Stat., § 6441 [P. C. § 564-5] provides that "boards of county commissioners are hereby authorized to grant franchises to persons or corporations for the construction, operation and maintenance of toll-bridges, outside of incorporated cities and towns, over and across streams within their respective counties, and over and across streams which are boundaries of counties." Before the trial of this case, the bridge company obtained from the commissioners of Okanogan and Douglas counties a franchise to construct the bridge in question. The granting of the franchise seems to have been regularly done and it complies with the law. This is all that is necessary in the way of franchises to authorize the maintenance of a condemnation suit.

But it is said that this franchise was obtained after the suit was instituted. That could make no difference. It was obtained before trial.

The further objection made by relator that the capital stock of the bridge company has not been subscribed according to the provisions of Rem. Comp. Stat., § 3803 [P. C. § 4504], which provides that no corporation "shall institute proceedings to condemn land for corporate purposes until the whole amount of its capital stock has been subscribed," is without merit. The testimony shows that all the capital stock had been duly subscribed before the suit was started.

[5] It is next contended that the franchise given to the bridge company by Douglas and Okanogan counties is insufficient and void in that the statute only authorizes the commissioners to grant franchises outside of the limits of incorporated towns and cities, whereas, it is claimed, the northerly end of the bridge will be within the corporate limits of the town of Brewster. It is very questionable whether the franchise would be insufficient, even though a part of the bridge were within the corporate limits of the town. It is probable that the franchise would be ineffective only as to the bridge approaches which were within the town limits; but would be good elsewhere. But however that may be, while apparently a small portion of the bridge or its approaches were originally within the corporate limits, before this case was tried the town of Brewster changed its corporate limits so as to place all parts of the bridge outside of the town. This was amply sufficient to meet all objections that relator has in this respect.

Another objection raised by relator is that the bridge company has no authority from the United States government to construct a bridge which will span this river, which is navigable. We are not quite able to understand why this objection is made, because there is in the record ample authority from the United States authorities for the construction of this bridge.

[6] The county franchise, as well as the authority from the United States government, ran to one Buell, who thereafter assigned them to the bridge company. It is contended that franchises of this character are not capable of being assigned. The United States authorizes the bridge to be constructed by "W. E. Buell, his heirs, executors, administrators or assigns." The license or franchise from Douglas and Okanogan counties ran to "W. E. Buell, of Seattle, King county, Washington, and to his heirs, executors, administrators and assigns." Plainly, the authorities granting these franchises or permits contemplated that they would be assigned and they authorized an assignment. Nor is there any reason in law why such franchises are incapable of being assigned. Franchises are proper subjects of sale or transfer and the title and enjoyment thereof may pass from one owner to another. Particularly is this true where the consent of the granting power is given for assignment. 26 C. J. 1037; *Evans v. Kroutinger*, 9 Idaho 153, 72 Pac. 882. See, also, note commencing on page 543 of 59 L. R. A.

[7] We do not see any merit in the contention of relator that there cannot be any condemnation here because the bridge company is seeking to do the same thing that the ferry company is doing, that is, transfer passengers and freight. This objection might be tenable if another ferry company was seeking to cross the river at the place where the bridge is to be located, but carrying freight and passengers by means of a ferry is not the same public convenience as carrying them by means of a bridge. In *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670, we held that property held by a corporation, even though actually devoted to a public use, may be taken for a public use by another corporation having the right of

eminent domain, provided it is not taken to be used for the same purpose and in the same manner. The authorities generally uphold the doctrine of this case.

We have examined some other points that have been raised, but do not find merit in them.

We feel that the court was right in making its decree of necessity, and it is affirmed.

MACKINTOSH, C. J., PARKER, ASKREN, and TOLMAN, JJ., concur.