This is a certiorari proceeding in this court wherein the relators, Oregon-Washington Railroad Navigation Company and Chicago, Milwaukee, St. Paul Pacific Railroad Company, seek review and reversal of an adjudication of public use and necessity rendered by the superior court for Grays Harbor county awarding to the Grays Harbor Pacific Railway Company the right to acquire, by eminent domain proceedings in that court, two overhead crossing rights over the tracks jointly owned by the relators in that county, upon payment of compensation therefor to be determined as the law directs.
Relators own and operate, and have for several years past owned and operated, an ordinary common carrier railroad, a portion of the main line of which runs easterly from the town of Cosmopolis, in Grays Harbor county, and a branch of which runs southeasterly from a point on the main line a short distance east of Cosmopolis, some twelve miles to its terminus, at a station called Vesta. This is called the North River branch. In May, 1929, there was organized, under the toll logging railroad law of this state, Rem. Comp. Stat., (§§ 8395-8398), the Grays Harbor Pacific *Page 653 
Railway Company; its principal object being specified in its articles of incorporation, as follows:
"To construct, acquire, own, hold, maintain and operate within the counties of Grays Harbor and Pacific, in the state of Washington, a common carrier, toll logging railroad or railroads for the transportation of logs and any and all timber and forest products and commodities incidental to logging operations and the getting out of timber and forest products, and to construct, maintain and operate all necessary yarding grounds, railroads and landings, and to transport any and all timber and forest products offered to it for carriage and to charge reasonable tolls or rates therefor, and for these purposes to acquire by purchase, lease, condemnation or otherwise rights-of-way, and to acquire, own, hold, use and enjoy all such real and personal property as may be necessary for its corporate purposes as a common carrier, or toll logging railroad corporation, and to do any and all things incidental to the foregoing objects."
Soon thereafter it duly adopted a plan for the acquiring of a right-of-way and for the acquiring and construction thereon of a toll logging railroad, to extend from Preacher's slough, a navigable inlet of Grays Harbor north of relators' main line and some three miles east of where the North River branch leaves the main line, southerly some sixteen miles, to a station called Brooklyn. The location of the proposed toll logging railroad, by reason of the topography of the country, necessarily crosses relators' main line at a point near Preacher's slough; and also necessarily crosses relators' North River branch line at a point some two miles from where that branch leaves the main line, then, somewhat closely paralleling relators' North River branch line for a distance of some ten miles, proceeds to Vesta, and thence proceeds some five miles farther to Brooklyn.
Relators' North River branch line, while an ordinary *Page 654 
common carrier railroad, has been engaged principally in the transportation of logs to market from logging operations carried on upon the adjacent timber lands. A large portion of the timber along and adjacent to relators' North River branch line has been logged off, though there is considerable timber left adjacent thereto so situated as to efficiently reach market over that branch line.
Beyond Vesta, the terminus of the North River branch, there is a vast quantity of standing timber capable of being logged and sent to market over the proposed toll logging railroad more efficiently than over the North River branch. Other facts will be noticed as may appear necessary in our discussion of the contentions here made in behalf of relators.
[1] It is contended in behalf of relators that the use for which the Grays Harbor Pacific Railway Company seeks to acquire these two crossing rights is not really a public use, and that the public interest does not require the prosecution of the enterprise; that is, does not require the construction and operation of the proposed toll logging railroad. Our eminent domain statute (Rem. Comp. Stat., § 925) prescribes these three prerequisites to an adjudication of public use and necessity: That the trial court shall be
". . . satisfied by competent proof that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, . . . and that the public interest requires the prosecution of such enterprise,. . . and that the real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise."
Our decisions in State ex rel. Weyerhaeuser Timber Co. v.Superior Court, 71 Wn. 84, 127 P. 591, and State ex rel.Puget Sound Power Light Co. v. Superior *Page 655 Court, 133 Wn. 308, 233 P. 651, notice and recognize that each of these three conditions is for judicial determination preliminary to rendering an adjudication of public use and necessity, to be followed by a determination of compensation for the taking, by the court or a jury, as the owner may elect.
There seems to us to be but little ground for arguing — indeed we do not understand counsel for relators to seriously contend — that the acquisition of these two crossing rights is not necessary "for the purposes of the enterprise." The evidence abundantly shows that the acquisition of the proposed crossings of relators' lines of railroad is absolutely necessary for the purpose of the enterprise; that is, for the purpose of efficient construction and operation of the proposed toll logging railroad, if it is to be constructed and operated at all.
[2] There also seems to us to be but little ground for arguing — indeed we do not understand counsel for relators to seriously contend — that a toll logging railroad company incorporated under Rem. Comp. Stat., §§ 8395-8398, is not a public service common carrier and as such has the right of eminent domain to acquire in good faith, by the due exercise of that right, rights-of-way, including such crossing rights as are here in question for the purpose of its enterprise, as a public use.
[3] The contention that the use for which the Grays Harbor Pacific Railway Company seeks to acquire these crossing rights over relators' lines is not really a public use, is rested upon the theory that the contemplated use is private, in that the proposed logging railroad will necessarily be almost wholly used for the purpose of transporting to market logs of its stockholders who were its promoters and organizers, and that such stockholders, very few in number, are in fact *Page 656 
intending to construct and put into operation the proposed logging railroad for the purpose of transporting their own logs to market and not in good faith to make of the proposed logging railroad a public service toll logging railroad. The evidence shows a considerable number of timber ownerships capable of being served by shipping of logs therefrom to market over the proposed logging railroad, though it may be conceded for present purposes that the total of such ownerships, in quantity of log productions, will be very small as compared with the total of the ownership log productions of the stockholders of the Grays Harbor Pacific Railway Company.
Assuming for the present that all of the stock of the Grays Harbor Pacific Railway Company has been legally subscribed for, though such subscription be made only by those few specially interested in the promotion and construction of the proposed logging railroad, we are of the opinion that such fact does not argue against the public service character of the Grays Harbor Pacific Railway Company as the builder and operator of its proposed toll logging railroad and its exercise of the power of eminent domain in the acquisition of property and property rights for that purpose. In our decision in State ex rel. Clark v.Superior Court, 62 Wn. 612, 114 P. 444, we held that such ownership of stock in a toll logging railroad company did not in the least impair the company's right to exercise its power of eminent domain for the purpose of acquiring property and property rights for the purpose of constructing its proposed toll logging railroad. In so holding, we quoted with approval the language of Judge Rudkin in State ex rel. McIntosh v. Superior Court,56 Wn. 214, 105 P. 637, as follows:
"The fact that private individuals or private corporations having a special interest in the construction *Page 657 
of a railroad subscribe to its capital stock does not deprive the road of its public character. The road when constructed will be a public service corporation and must serve the public, regardless of the individuality of its stockholders or the business in which they may be engaged."
This view of the law was adhered to in State ex rel. Chicago,Mil. P.S.R. Co. v. Public Service Commission, 77 Wn. 529,137 P. 1057, Ann. Cas. 1915D 202, L.R.A. 1918B 786.
[4] It is contended in behalf of relators that it does not appear that the public interest requires the prosecution of such enterprise. We have seen that, while the proposed toll logging railroad parallels somewhat closely some ten miles of relators' North River branch line, and it may be said that to that extent that branch line serves that territory sufficiently for present public necessity, the proposed toll logging railroad extends some five miles farther into a territory of a vast quantity of marketable timber. So we have here a situation which we think does not warrant us in holding that the trial court erred in deciding that the use contemplated "is a public use and that necessity exists therefor;" this being the language of the finding of the trial court embodied with other findings in the recitals of the order of adjudication of public use and necessity.
We have had but little help from the authorities brought to our attention touching the measure of public interest requiring the prosecution of a given enterprise to warrant the exercise of the power of eminent domain in aid of the consummation of the enterprise. In State ex rel. Weyerhaeuser Timber Co. v. SuperiorCourt, 71 Wn. 84, 127 P. 591, Judge Ellis, speaking for the court, made this observation:
"It is next urged that there was no sufficient showing *Page 658 
that the public interest requires the prosecution of the enterprise. It is claimed that this is one of the things which the statute (Rem. Bal. Code, § 925), expressly refers to the court for decision upon evidence. This must be conceded. The statute plainly so states. It must also be conceded that public interest is not identical with public use. There are many enterprises which are in a sense of public interest, which are not devoted to public use. Public interest is nevertheless a necessary concomitant of public use. Where, therefore, as in this case, the only present demand is for a public use, and the respondent has, by its franchise and by a contract with the town, bound itself to furnish the town with light, we must, in the absence of any evidence to the contrary, assume that it is of interest to the public that the enterprise be prosecuted in some form."
In State ex rel. McPherson Bros. Co. v. Superior Court,142 Wn. 284, 252 P. 906, Judge Bridges, speaking for the court touching an exercise of eminent domain power to acquire property incident to the construction of a bridge over the Columbia river near a licensed ferry, which ferry was serving the public much as the bridge would serve it, made these observations:
"We do not see any merit in the contention of relator that there cannot be any condemnation here because the bridge company is seeking to do the same thing that the ferry company is doing, that is, transfer passengers and freight. This objection might be tenable if another ferry company was seeking to cross the river at the place where the bridge is to be located, but carrying freight and passengers by means of a ferry is not the same public convenience as carrying them by means of a bridge."
These considerations lead us to conclude that, since the proposed toll logging railroad will furnish common carrier log shipping facilities from territory at a considerable distance beyond the terminus of relators' *Page 659 
North River branch, we cannot say that the trial court erred in deciding that the public interest requires the prosecution of the enterprise.
[5] It is contended that the proposed toll logging railroad will not be capable of rendering public service because it will not have physical connection with relators' lines of railroad, nor with any other common carrier railroad. One answer to this is that the proposed toll logging railroad will be capable of carrying logs and delivering them in Preacher's slough, a navigable inlet of Grays Harbor, from whence they may readily reach a large market by transportation over navigable waters. Plainly, we think this contention is untenable.
[6] Contention is made in behalf of relators that the Grays Harbor Pacific Railway Company was without authority to institute this eminent domain proceeding because all of its capital stock was not then legally subscribed for. It may be conceded that there were some irregularities in the original organization and stock subscription of the Saginaw Logging Company in the year 1926, which company, in May, 1929, about a month prior to the commencement of this eminent domain proceeding, subscribed for the larger portion of the capital stock of the Grays Harbor Pacific Railway Company upon its organization. The argument is that these irregularities rendered the Saginaw Logging Company unqualified to do business and hence unqualified to make such subscription for the stock of the Grays Harbor Pacific Railway Company.
We think the record before us renders it fairly certain that all such irregularities were timely and effectually cured so as to render the subscription made by the Saginaw Logging Company for the stock of the Grays Harbor Pacific Railway Company an effectual legal subscription for that stock. The trial court *Page 660 
found, among other things, in its recitals in its order adjudicating public use and necessity, "that all of the capital stock of the plaintiff [Grays Harbor Pacific Railway Company] has been subscribed." Our examination of this somewhat involved record touching this question leads us to conclude that we should not disturb this finding and conclusion of the trial judge.
[7] The constitutionality of our toll logging railroad act is challenged, more particularly as applicable to the rights of relators under the circumstances of this controversy; the argument being that the sanctioning of the exercise of eminent domain power by the Grays Harbor Pacific Railway Company under these circumstances will result in the taking or damaging of relators' property in violation of the due process of law guaranties of the state and Federal constitutions. It seems to us that this contention is effectually negatived by our decisions inState ex rel. McIntosh v. Superior Court, 56 Wn. 214,105 P. 637; State ex rel. Clark v. Superior Court, 62 Wn. 612,114 P. 444, and State ex rel. Chicago, Mil. P.S.R. Co. v.Public Service Commission, 77 Wn. 529, 137 P. 1057, Ann. Cas. 1915D 202, L.R.A. 1918B 786.
Some other contentions are made in behalf of relators. We deem it sufficient to say that we have examined them and consider them so devoid of merit as not to call for further notice in this opinion.
The order of the superior court adjudicating public use and necessity favorable to the Grays Harbor Pacific Railway Company is affirmed.
MITCHELL, C.J., TOLMAN, BEALS, and MILLARD, JJ., concur. *Page 661